**AMERICAN MEDICAL ELECTRONICS, INC., Appellant,**

v.

**Martin KORN, V. Bryan Medlock, and Richards, Medlock & Andrews, Inc., Formerly Known as Richards, Harris & Medlock, Inc., Appellees.**

No. 05–90–01546–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 1991.

Rehearing Denied Oct. 7, 1991.

Cary I. Schachter, Dallas, for appellant.

Schuyler B. Marshall, Deborah G. Han-Rinson, Robert V. Vitanza, Dallas, for appellees.

Before BAKER, LAGARDE and MALONEY, JJ.

## OPINION

LAGARDE, Justice.

American Medical Electronics (AME) appeals the summary judgment granted in favor of appellees. AME brings four points of error contending that the trial court erred in determining that AME's suit for attorney malpractice was time-barred under the applicable two-year and four-year statutes of limitations. We overrule AME's points and affirm the trial court's judgment.

## FACTUAL BACKGROUND

In 1982, AME hired Sheldon Thaler as a consultant to assist it in developing a device to stimulate the healing of broken bones. AME and Thaler completed development of the device in 1983, and a dispute arose concerning the ownership of the invention. AME hired the law firm of Richards, Harris & Medlock, Inc., to represent it in the dispute with Thaler, and Martin Korn was the main attorney on the case. Thaler suggested that he be allowed sole ownership rights in the patent application. AME consulted with Korn on this proposal, and Korn told AME: (1) that the patent probably would not issue, and (2) that even if the patent did issue, AME could practice the invention nonexclusively under the shop-right doctrine.[1] Based on this advice, AME assigned its rights in the patent application to Thaler.

On March 31, 1987, Thaler was issued a patent for the device. AME then consulted the law firm of Howson & Howson to obtain a second opinion concerning its right to continue to practice the patented device. In a letter dated July 21, 1987, Howson told AME that, although a reasonable argument could be made that the assignment transferred ownership only and not the shop

right to practice the invention, "if the issue were litigated, there is a substantial likelihood that the court would conclude that the shop right was released by the ... assignment."

On January 26, 1990, Thaler sued AME for patent infringement, and on February 23, 1990, AME sued Korn and the other appellees for malpractice. Thaler's patent-infringement suit against AME was settled on June 6, 1990. In its suit against appellees, AME alleged that appellees "were negligent in failing to advise AME of the possibility that it might not have non-exclusive rights to practice the invention in the event the patent application were granted." AME further alleged that if appellees had advised it "that there was a possibility it might lose the right to practice the invention, it would not have conveyed rights in the patent application to Thaler." AME alleged that this negligence proximately caused the Thaler litigation.

## STANDARD OF REVIEW

The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

1. The shop-right doctrine is an equitable defense to an action for patent infringement. The doctrine permits an employer whose property is used in the development of an invention patented by its employee to practice the invention nonexclusively without having to pay royalties or obtain an express license from the inventor-employee. *See* Annotation, *Application and Effect of "Shop Right Rule" or License Giving Employer Limited Rights in Employees' Inventions and Discoveries,* 61 A.L.R.2d 356, 370 (1958).

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Wilcox v. St. Mary's Univ.,* 531 S.W.2d 589, 592–93 (Tex.1975). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit, but is to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of fact remains. *Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

■ When the defendant is the movant, summary judgment is proper only if the plaintiff cannot, as a matter of law, succeed upon any theory pleaded. *Peirce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 852 (Tex.Civ.App.—Amarillo 1979, no writ). Thus, the defendant can prevail by conclusively establishing against the plaintiff at least one factual element of each theory pleaded by the plaintiff, *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970), or by conclusively establishing every factual element of an affirmative defense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). Conversely, the plaintiff can bar summary judgment by presenting evidence that creates a fact question on those elements of the plaintiff's case under attack by the defendant or on at least one element of each affirmative defense advanced by the defendant. *Torres v. Western Casualty Sur. Co.,* 457 S.W.2d 50, 52 (Tex.1970); *see also Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 680–81 (Tex.1982). Alternatively, the plaintiff can defeat the motion by conceding that the material facts are undisputed but convincing the court that the defendant's legal position is unsound. *Estate of Devitt,* 758 S.W.2d 601, 602 (Tex. App.—Amarillo 1988, writ denied).

■ A defendant seeking summary judgment on the basis of limitations must prove as a matter of law when the cause of action accrued. When the plaintiff has pleaded the discovery rule,[2] the defendant must negate the rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990).

## APPLICABILITY OF A FOUR–YEAR STATUTE OF LIMITATIONS

■ In the third and fourth points, AME contends that the trial court erred in granting the summary judgment because a suit for attorney malpractice is subject to a four-year limitations period. AME argues that an attorney malpractice claim structured as a "breach of implied warranty based upon an oral contract" is subject to the limitations period for breach of an oral contract. Earlier, the statute of limitations for breach of an oral contract had been two years. It was later changed to four years. AME directs us to two cases in support of this argument: *Woodburn v. Turley,* 625 F.2d 589, 592 (5th Cir.1980); and *Citizens State Bank v. Shapiro,* 575 S.W.2d 375, 386–87 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Unfortunately for AME, *Woodburn* rejects this argument and states that attorney malpractice claims sound in tort regardless of whether they are framed as tort or contract actions. *Citizens State Bank* strongly suggests that the same conclusion reached in *Woodburn* may be correct but found the distinction irrelevant because, at that time, the statutes of limitations for oral contracts and tort claims were the same. This Court considered and rejected a similar argument in *Black v. Wills,* 758 S.W.2d 809, 814 (Tex.App.—Dallas 1988, no writ). Finally, the Texas Supreme Court has clearly stated that "[a] cause of action for legal malpractice is in the nature of a tort and is thus governed by the two-year limitations statute." *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988). We hold that the trial court did not err in applying a two-year statute of limitations. The third and fourth points are overruled.

---

2. Under the discovery rule, the statute of limitations does not begin to run until the claimant discovers or in the exercise of reasonable diligence should have discovered the facts establishing a cause of action. *Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex.1988).

## TIME OF ACCRUAL OF AME'S CAUSE OF ACTION

In the first and second points, AME contends that the trial court erred in holding that AME knew or should have known that its cause of action against appellees accrued more than two years before it filed suit. The main dispute on this issue is the determination of when AME knew or should have known that it suffered injury due to the negligence of appellees.

 A cause of action for negligence accrues at the moment that the plaintiff is entitled to sue the defendant for damages [3] caused by the negligent acts or omissions of the defendant. *Willis*, 760 S.W.2d at 644; *Zidell v. Bird*, 692 S.W.2d 550, 554 (Tex.App.—Austin 1985, no writ). If, however, the damages are such that the plaintiff did not discover them and reasonably could not have discovered them at the time that they were suffered, then, under the discovery rule, the limitations period is tolled until the plaintiff either does discover them or should discover them. *Willis*, 760 S.W.2d at 646. The limitations period begins to run as soon as the plaintiff discovers or should discover *any* harm, however slight, resulting from the negligence of the defendant. *Zidell*, 692 S.W.2d at 555. If the plaintiff does not sue within two years of the discovery of minor injury but waits until the injuries become substantial, the suit will be time barred. *See Zidell*, 692 S.W.2d at 555 (citing *Robertson v. Texas & N.O.R. Co.*, 122 S.W.2d 1098, 1099 (Tex.Civ.App.—San Antonio 1938, writ ref'd)).

In its petition, AME alleged that appellees "were negligent in failing to advise AME of the possibility that it might not have non-exclusive rights to practice the invention in the event the patent application were granted." AME further alleged that if appellees had "advised AME that there was a possibility it might lose the right to practice the invention, it would not have conveyed rights in the patent application to Thaler." Finally, AME states that the damages it sustained as a result of Thaler's suit against it resulted from appellees' negligence. In the summary judgment proceedings, appellees contended that AME suffered injury due to the alleged negligence at the time that the patent issued and that it should have become aware of the injury due to the negligence when Thaler's attorney denied that AME had a shop right or, at the latest, at the time that Howson & Howson advised it that there was a possibility that a judge could find that AME had waived its shop right. AME contends that it did not suffer any injury due to the negligence until Thaler filed suit against it, and because it filed suit against appellees within a month after being sued by Thaler, it was well within the two-year statute of limitations.

 The negligence alleged in this case is one of omission: the failure to warn of the possibility that a judge could hold that no shop right exists. As AME's president states in his affidavit, AME would never have given up its rights in the patent application if it had "known there was any risk it might be charged with infringement for use of the invention." In a legal malpractice, negligent advice case, the invasion of the plaintiff's legally protected interest occurs at the time that the plaintiff receives the incomplete or otherwise improper advice. Here, then, AME's legally protected interest in receiving complete, professional advice from its attorneys was invaded at the time that it received the incomplete advice. The remaining issue, then, is the time at which AME discovered or should have discovered that the advice it received was incomplete and that it could sue for damages.

When the patent issued on March 31, 1987, AME was immediately put on notice that appellees' prediction that the patent probably would not issue was wrong. AME then went to the law firm of Howson & Howson to obtain a second opinion. The Howson firm told AME in July 1987 that it was subject to a suit for patent infringement and that a court probably would not hold that a shop right existed. At this

---

**3.** "Damages" may be defined as "legal injuries," which are any invasions of the plaintiff's legally protected interest. *Zidell v. Bird*, 692 S.W.2d 550, 555 (Tex.App.—Austin 1985, no writ).

point, AME was put on notice that there was at least a difference of opinion among lawyers concerning AME's rights under the shop-right doctrine. Thus, AME then knew or should have known that there existed "the possibility that it might not have non-exclusive rights to practice the invention in the event the patent application were granted," which was the negligence AME alleged in its petition.

AME maintains that it could not have known that it had been damaged until Thaler sued it. We disagree. The initial damage to AME, although perhaps nominal, occurred when its right to receive professional and complete advice from its attorneys was violated. AME knew or should have known that it had been damaged at the time that Howson told it that a court would probably hold that it had no shop right. Thus, under the discovery rule, AME's cause of action against appellees accrued when it received the letter from Howson in July 1987. The fact that AME did not know the full extent of its damages at that time did not prevent the statute of limitations from running. *Black*, 758 S.W.2d at 816; *Zidell*, 692 S.W.2d at 555. Because AME did not bring suit against appellees within two years of the discovery of their wrongdoing, the trial court did not err in granting appellees' motion for summary judgment based on the running of the statute of limitations. The first and second points are overruled, and the trial court's judgment is affirmed.