**Willard H. BURNAP, Appellant,**

v.

**Lawrence R. LINNARTZ and Ingram, Linnartz & Reynolds, P.C., Appellees.**

**No. 04–97–00959–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 8, 2000.

Rehearing Overruled Jan. 12, 2001.

---

**13.** *See* Tex.R.App.P. 33.1(a)(2)(A).

Broadus A. Spivey, Spivey & Ainsworth, P.C., Paul E. Knisely, Thomas P. Prehoditch, Knisely & Prehoditch, P.C., Austin, for appellant.

Ryan G. Anderson, Prichard, Hawkins & Young, L.L.P., Cathleen M. Stryker, William H. Ford, Ball & Weed, P.C., San Antonio, for appellees.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

Opinion by SARAH B. DUNCAN, Justice.

A majority of this Court grants the motion for consideration en banc filed by Willard H. Burnap. Upon reconsideration, we withdraw the panel's opinion and judgment signed September 16, 1998, and substitute this opinion and a new judgment in their place.

Willard H. Burnap appeals the summary judgment rendered against him on his claims against attorney Lawrence R. Linnartz and Linnartz's former law firm, Ingram, Linnartz & Reynolds, P.C. Sitting en banc, a majority of this court holds the trial court correctly rendered judgment

against Burnap on his claim for negligent infliction of emotional distress. We thus affirm this aspect of the trial court's judgment. However, we reverse the remainder of the trial court's judgment and remand Burnap's remaining claims for trial.

## STANDARD OF REVIEW

■ We review a summary judgment *de novo*. Accordingly, we will uphold a Rule 166a(c) summary judgment only if the summary judgment record establishes there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether the summary judgment record establishes the absence of a genuine issue of a material fact, we view as true all evidence favorable to the respondent and indulge every reasonable inference and resolve all doubts in his favor. *Id.* This standard is reflected in the factual background set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early 1980s, Walter S. Burnap and Daniel J. Linnartz became acquainted as a result of their involvement in the management of two corporations, River City Corporation (RCC) and Kittie Petroleum, Inc. (KPI). The two corporations were represented on occasion by Linnartz's brother, Lawrence, who was then a partner in McCamish, Ingram, Martin & Brown (the McCamish Firm). In August 1984, Burnap and Danny Linnartz, along with B. Max Burleson and Lester L. Kelly, formed a third partnership—Kittie Partners 1984–1. From its inception, Kittie Partners was responsible for payment of a $3.22 million note executed by Walter Burnap and made payable to First South Savings Association. Payment of the First South Note was personally guaranteed by Kelly, Burleson, and Linnartz.

Shortly after Kittie Partners was formed, Larry Linnartz told Burnap that he and the McCamish Firm wanted to provide all of the legal services for RCC, KPI, and Kittie Partners, as well as the involved individuals. Thereafter, as a result of this meeting, Burnap and all of the other individuals involved in RCC, KPI, and Kittie Partners moved the majority of their legal work to Larry Linnartz and the McCamish Firm.

In March 1985, Walter Burnap assigned a portion of his interest in Kittie Partners to his father, Willard H. Burnap. This assignment was made effective as of the date of Kittie Partners' inception in August 1984. However, unlike the original partners, Willard Burnap did not personally guarantee payment of the First South Note.

In the summer of 1986, Danny Linnartz and Max Burleson withdrew from Kittie Partners. Under the terms of their withdrawal, Linnartz and Burleson reconveyed to Kittie Partners their partnership interests, and Kittie Partners conveyed to Linnartz's and Burleson's new partnership, D & M Partners, certain of its assets. As a part of this transaction, Kittie Partners, Walter Burnap, Linnartz, Burleson, and D & M Partners entered the 1986 Release and Indemnity Agreement, which was drafted by a McCamish Firm associate, William M. Rork, at Lawrence Linnartz' request. In substance, this agreement provided as follows:

### RECITALS

WHEREAS, effective July 31, 1986, Linnartz and Burleson have conveyed their respective interests in [Kittie] Partners to [Kittie] Partners and have withdrawn from [Kittie] Partners in consideration of the distribution by [Kittie] Partners of certain assets of [Kittie] Partners to D & M; and

WHEREAS, the withdrawal of Linnartz and Burleson from [Kittie] Partners and the distribution of assets by [Kittie] Partners to D & M has been approved by the remaining partners in accordance

with the terms of [the partnership agreement].

WITNESSETH:

NOW, THEREFORE, ... [Kittie] Partners, [Walter] Burnap, Linnartz, Burleson, and D & M agree as follows:

1. [Kittie] Partners and [Walter] Burnap ... (collectively, the "Releasing Party") hereby covenant and agree to release, indemnify and hold harmless Linnartz, Burleson and D & M ... (collectively, the "Indemnified Party") from and against any claim, demand, recovery, obligation, loss, liability, damage, cost or expense ... that any Indemnified Party, may incur or sustain for, on or by reason of any matter, cause or thing whatsoever, relating to, arising out of, or in connection with any transaction, conveyance, encumbrance, loan, mortgage, or other activity by, for or on behalf of the Releasing Party, or any other liability the Indemnified Party may have undertaken to pay (as maker, co-maker, endorser, guarantor, indemnitor or otherwise) on behalf of [Kittie] Partners or [Walter] Burnap, ..., except as specifically assumed, taken subject to or otherwise consented to, and only to the extent so assumed, taken subject to or consented to by the Indemnified Party in conjunction with the transactions recited in the premises hereof, whether now existing or hereafter arising.

2. Linnartz, Burleson and D & M ... hereby covenant and agree to release, indemnify and hold harmless [Kittie] Partners and [Walter] Burnap ... from and against any claim, demand, recovery, obligation, loss, liability, damage, cost or expense ... that [Kittie] Partners and/or [Walter] Burnap ... may incur or sustain for, on or by reason of any matter, cause or thing whatsoever, relating to, arising out of, or in connection with any transaction, conveyance, encumbrance, loan, mortgage asset or activity of, by, for or on behalf of Linnartz, Burleson and/or D & M, whether now existing or hereafter arising.

This release was signed by the two partnerships, Kittie Partners (by its remaining partners) and D & M Partners (by its partners), and by Walter Burnap, Linnartz, and Burleson, individually and as partners. Willard Burnap signed the 1986 Release and Indemnity Agreement only in his capacity as a partner. The Burnaps' understanding was that because Willard Burnap "did not sign the agreement as an individual, it would not impose any personal liability on him." The Burnaps relied on Larry Linnartz' and Rork's expertise in preparing the appropriate documents and expected they would protect the Burnaps' individual interests or explain any conflicts of interest. It is undisputed that neither Rork nor Linnartz presented the Burnaps with a conflicts letter or a memorandum explaining the possible conflicts that could arise out of the indemnity agreement.

In July 1987, Kelly withdrew from Kittie Partners and, in January 1988, Willard Burnap sold his interest in Kittie Partners to his son Walter. Shortly thereafter, Walter Burnap, as Kittie Partners' sole remaining partner, dissolved the partnership and sold a majority of its assets and liabilities to KPI. Among the liabilities conveyed was the First South Note. In conjunction with this conveyance, First South agreed to "release[ ] [Kittie] Partners and the persons who were partners of [Kittie] Partners from any further liability for the [First South] Note ... *except* to the extent such persons may be, and First South specifically does not release, Walter S. Burnap or any person who has executed a personal guaranty of payment and performance in favor of First South with regard to the [First South] Note...." The First South Release, negotiated and drafted by Rork, was intended to release Willard Burnap from his liability as a partner on the First South Note.

In March 1988, Linnartz and several of his partners and associates left the

McCamish Firm and formed Ingram, Linnartz & Reynolds, P.C. (the Linnartz Firm). Subsequently, in 1989, KPI defaulted on the First South Note. After the foreclosure sale, there remained a deficiency of just over $1.35 million. Seeking recovery of this deficiency, First South and its conservator, the Resolution Trust Corporation, filed suit in federal district court in August 1989 against Kittie Partners and the guarantors on the note—Walter Burnap, Danny Linnartz, Burleson, and Kelly. Linnartz and Burleson were represented in this suit by Larry Linnartz and the Linnartz Firm. Neither Linnartz nor the Linnartz Firm disclosed the representation to Willard Burnap. Nor did they seek his consent. Shortly before the suit was filed, Burleson and Daniel Linnartz sent Kelly and the Burnaps a letter stating:

> I have received the enclosed letter from the law firm representing First South Savings Association in connection with the above-described indebtedness.
>
> When Max Burleson and I transferred our interest in Kittie Partners 1984–1 to the three of you, you agreed to indemnify and hold us harmless from any and all claims under the above-described indebtedness and any and all other cost or expense including the reasonable cost incurred in connection with the defense of such action to include, but not be limited to, attorney fees.
>
> I would request at this time that you inform me immediately of the status of this matter as well as your individual intent of how you are going to resolve this problem as I am about to incur substantial attorney's fees in the defense of this matter, and I expect the three of you to reimburse me for any cost that I might expend in this matter per the terms of our agreement.

Although this letter was sent in July 1989, it was not received by Willard Burnap until September.

On January 30, 1990, Linnartz and Burleson settled with the RTC, agreeing to the rendition of a judgment against them for the full amount of the deficiency and assigning their rights under the 1986 Release and Indemnity Agreement to First South. In exchange, First South agreed to use its best efforts to obtain a judgment on the 1986 Release and Indemnity Agreement against Kittie Partners, Kelly, and the Burnaps. If this effort were successful, First South would execute on this judgment before attempting to execute on the judgments against Linnartz and Burleson; if unsuccessful, First South would not execute on the judgments against Linnartz and Burleson if they paid First South $25,000 within thirty days of demand.

On February 4, 1990, First South and the RTC amended their complaint in the deficiency suit to add a claim against Willard Burnap on the 1986 Release and Indemnity Agreement. On June 18, 1990, after Walter Burnap and Kelly filed for bankruptcy and were dismissed from the suit, First South and the RTC moved for summary judgment against Kittie Partners and Willard Burnap. This motion was granted on October 4, 1990, and the federal district court rendered judgment against Kittie Partners and Willard Burnap for the full amount of the deficiency ($1,352,583.95), prejudgment interest ($188,108.96), and postjudgment interest. This judgment was affirmed in December 1992 by the Fifth Circuit Court of Appeals, which reasoned that, while the First South Release relieved Burnap of liability on the First South Note in his capacity as a partner, it did not release him "in his role as indemnitor of Linnartz and Burleson under the [1986 Release and] Indemnity Agreement." *First South Savings v. Linnartz*, No. 90–2875, slip op. at 7, 980 F.2d 1443 (5th Cir. Dec.2, 1992).

Approximately one year before the deficiency judgment against him was affirmed, on November 27, 1991, Burnap sued Larry Linnartz and the Linnartz Firm and, in 1993, Rork and the McCamish Firm. Burnap alleged the following claims:

**(1) Professional Negligence**—Burnap alleged "Defendants failed to disclose [to Burnap] their conflicts and potential conflicts of interest, and the nature and extent of such conflicts and potential conflicts of interest. Further, Defendants failed to act or to provide such legal advice and services to [Burnap] as a reasonable and prudent attorney or law firm would have done under same or similar circumstances."

**(2) Constructive Fraud; Fraud and Deceit**—Burnap alleged "Defendants' actions in failing to reveal material facts of conflicts of interest to ... Burnap and/or in disclosing confidential information to third parties to his detriment constitute a constructive fraud on the part of Defendants toward ... Burnap."

**(3) Breach of Contract**—Burnap alleged "Defendants breached their contracts with [Burnap] by failing to carry out their actual and implied obligations thereunder, and by violating the implied covenants in such a contract to act in good faith and deal fairly with ... Burnap."

**(4) Breach of Implied Covenant of Good Faith and Fair Dealing**—Burnap alleged that, "[i]n their provision of legal services to [Burnap], and other dealings related to [Burnap's] interests, Defendants violated their implied covenant to act in good faith and deal fairly with ... Burnap."

**(5) Intentional and Negligent Infliction of Emotional Distress**—Burnap alleged the conduct of the defendants set forth in Burnap's petition amounts to intentional and negligent infliction of emotional distress.

**(6) Texas Deceptive Trade Practices Act**—Burnap alleged he was "a 'consumer' of the legal services rendered and to be rendered by ... Linnartz and ... [the Linnartz Firm]," and the provision of these legal services violated section 17.46(b)(5) and (b)(7), because the legal services were not of the characteristic or quality represented; section 17.46(b)(23), because the defendants failed to disclose information concerning their legal services and such failure "was intended to induce [Burnap] into a transaction he would otherwise not have entered;" and sections 17.50(a)(2) and 17.50(a)(3), because the defendants unconscionably "(a) fail[ed] to release and protect ... Burnap from liability on the First South note as they had promised and purported to do, and (b) ... us[ed] such negligent failure to protect him as an affirmative tool against him by entering into a deal with the RTC to protect ... Linnartz's brother by assigning the entire liability on the First South note to be imposed against [Burnap.]"

**(7) Violations of Confidential Relationship and Breach of Fiduciary Duty** Burnap alleged the Defendants violated the confidential relation arising out of their attorney-client, fiduciary relationship "by their representation of Daniel Linnartz and B. Max Burleson to the detriment of [Burnap]."

In response to the allegations that his claims were barred by limitations, Burnap also pleaded fraudulent concealment and the discovery rule.

In 1994, the defendants moved for summary judgment. In their motion, Rork and the McCamish Firm contended Burnap's claims against them were barred by limitations. The trial court agreed, as did this court in Burnap's first appeal. *Burnap v. Linnartz,* 914 S.W.2d 142, 148 (Tex. App.—San Antonio 1995, writ denied). However, Linnartz's and the Linnartz Firm's first summary judgment motion did not seek summary judgment on limitations grounds. Rather, they contended (1) "no attorney-client relationship was ever established between them and Willard Burnap," *Id.;* and (2) "Burnap lacked standing because Burnap's liability on the First South Savings note was created solely by reason of Burnap's execution of the indemnity agreement, which he did as a partner of KP 1984–1," and he admitted in open court that he "sought recovery solely in his indi-

vidual capacity." *Id.* at 150. This motion was also granted by the trial court. However, this court reversed the trial court's judgment and remanded the cause for trial. *Id.* at 151.

In reversing, this court held "Burnap is entitled to pursue his cause of action in his individual capacity"; therefore, "[t]he trial court could not properly enter summary judgment for Linnartz on the basis of standing." *Id.* The court also held the absence of an attorney-client relationship could not support the trial court's summary judgment because the record revealed genuine issues of material fact "about the attorney-client relationship between appellees and Willard Burnap," including whether such a relationship existed, whether "appellees committed malpractice in failing to issue a conflicts letter in connection with the indemnity agreement and in failing to obtain a waiver from Willard Burnap before representing two former partners in negotiating their settlement on the First South Savings note," and "whether the attorneys were negligent in failing to advise Willard Burnap that they did not represent him." *Id.*

On remand, Linnartz and the Linnartz Firm again moved for summary judgment. In their second motion, Linnartz and the Linnartz Firm contended (1) no cause of action for negligent infliction of emotional distress exists under Texas law; (2) Burnap was not entitled to pursue a cause of action under the Texas Deceptive Trade Practices Act because he was not a consumer of the legal services provided by Linnartz and the Linnartz Firm in connection with either the 1986 Release and Indemnity Agreement or the 1988 First South Release; (3) Linnartz is not personally liable for Rork's acts and had no individual duty to supervise Rork; (4) Burnap's claims are barred by limitations; (5)

the Linnartz Firm cannot be held liable because it was not in existence at the time of the alleged malpractice; (6) Linnartz's failure to supervise Rork in drafting the 1986 Release and Indemnity Agreement did not proximately cause Burnap's damages; and (7) Linnartz's actions in connection with the First South suit did not proximately cause Burnap's injury. The trial court again granted the defendants' motion, and Burnap has again appealed.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■ Burnap concedes the trial court correctly granted a summary judgment against him on his negligent infliction of emotional distress claim because no such cause of action exists under Texas law. *Boyles v. Kerr,* 855 S.W.2d 593, 595–96 (Tex.1993). We therefore affirm the summary judgment against Burnap on his claim for negligent infliction of emotional distress. In doing so, we express no opinion as to whether Burnap is entitled to recover for his emotional distress or mental anguish as an element of damages, as he contends. *See Douglas v. Delp,* 987 S.W.2d 879, 884–85 (Tex.1999).

## CONSUMER STATUS

Linnartz and the Linnartz Firm contend they are entitled to a summary judgment on Burnap's claims under the Texas Deceptive Trade Practices Act because the record conclusively establishes Burnap was not a consumer in relation to the legal services provided in connection with either the Release and Indemnity Agreement or the First South Release. We disagree.

■ At the time the legal services in this case were provided, the DTPA applied in the attorney-client context. *DeBakey v. Staggs,* 612 S.W.2d 924, 925 (Tex.1981) (per curiam).[1] To recover, a DTPA plain-

---

1. Effective September 1, 1995, an amendment to the DTPA excludes from its coverage most claims against professionals and vicariously liable entities "for damages based on the ren-

dering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." Tex.

tiff must establish he is a consumer. TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon Supp.1999). With certain exceptions that do not apply in this case, a consumer is "an individual ... who seeks or acquires by purchase or lease, any goods or services." *Id.* § 17.45(4). Therefore, a DTPA plaintiff must prove (1) he sought or acquired goods or services and (2) these goods or services form the basis of his complaint. *Cameron v. Terrell,* 618 S.W.2d 535, 539 (Tex.1981). However, we do not "require the consumer to be an actual purchaser ... of the ... services, as long as [he] is the beneficiary of those services." *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 815 (Tex.1997) (holding the plaintiff was a consumer of the defendant's audit services because the services were required by the plaintiff as a condition of its purchase, the services were intended to benefit the plaintiff, and the defendant was aware the plaintiff required and would rely on its services). When the material facts are not disputed, consumer status presents a question of law. *Vinson & Elkins v. Moran,* 946 S.W.2d 381, 406 (Tex.App.—Houston [14th] 1997, writ dism'd by agr.). But "the existence of the underlying facts that give rise to consumer standing ... may be factual issues for the jury." *Id.*

### The Release and Indemnity Agreement

■ Linnartz and the Linnartz Firm argue Willard Burnap was not a consumer as to the legal services provided in connection with the Release and Indemnity Agreement because he did not engage or pay Linnartz or the Linnartz Firm for their services, nor was the primary purpose of the agreement for his benefit. We agree the record establishes the factual premise for this argument. However, the appellees err in their legal conclusion.

■ Whether Burnap was the actual purchaser of the legal services is not dispositive of his consumer status. *Arthur Andersen & Co.,* 945 S.W.2d at 815. Rath-

er, the dispositive issue is whether Burnap was a beneficiary of the legal services provided. *Id.* And the summary judgment record in this appeal—like the virtually identical record in Burnap's previous appeal—does not conclusively establish that Burnap was not a beneficiary. *See Burnap I,* 914 S.W.2d at 148-50. To the contrary, Burnap's affidavit raises a genuine issue of material fact as to his status as a beneficiary because it asserts the existence of an attorney-client relationship:

> My understanding at all times was that Larry Linnartz and his law firm had been retained by my son, Walter Burnap, to represent the partnership and the members of the partnership in all of the above matters and to perform the above-described legal services for us. Although I had very little personal contact with Larry Linnartz or other attorneys in his law firm, and did not deal directly with them with regard to their handling of the matters affecting my interests, I understood from my son, Walter Burnap, that Larry Linnartz and other attorneys at McCamish, Ingram, Martin & Brown represented Kittie Partners 1984–1, as an entity, and also represented my interests in all transactions. It was my understanding and belief that Larry Linnartz and McCamish, Ingram, Martin & Brown were my attorneys, and I certainly expected that they would protect my interests, or at least that they would notify me of any conflicts or potential conflicts of interest between me and the other partners which might compromise their ability to protect my interests.

And, as we noted in Burnap's first appeal, he "presented the affidavit of attorney Terry Kenyon as part of his controverting summary judgment proof. Kenyon opined that appellees represented Willard Burnap individually and as a partner in KP 1984–1," and "that appellees created a situation in which Willard Burnap was entitled to

BUS. & COM CODE ANN. § 17.49(c)-(d) (Vernon Supp.1998).

believe, and could reasonably believe, that the attorneys would consider and protect the individual interests of the Burnaps, or at least advise them of the need to seek independent counsel." *Burnap I*, 914 S.W.2d at 149. The summary judgment record in this case thus brings it squarely within *Arthur Andersen & Co.*, 945 S.W.2d at 815, and distinguishes it from *Vinson & Elkins v. Moran*, 946 S.W.2d 381 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.), upon which Linnartz and the Linnartz Firm rely. In *Moran*, there was no evidence "the beneficiaries intended to rely on V & E." *Id.* at 409. We thus need not decide whether to engraft the "primary purpose" doctrine onto the Supreme Court's definition of a DTPA consumer, as the appellees urge. *See Moran*, 946 S.W.2d at 408.

As in *Burnap I*, "we conclude that a material issue of fact remains on the issue of [the] existence of an attorney-client relationship." Necessarily, therefore, we cannot conclude the summary judgment record conclusively establishes Burnap was not a consumer as to the 1986 Release and Indemnity Agreement. *See, e.g., DeBakey*, 612 S.W.2d at 924 (holding that clients were consumers of attorney's legal services).

### The First South Release

Linnartz and the Linnartz Firm next contend Burnap cannot establish he was a consumer as to the legal services provided in connection with the First South Release because only Rork performed services in this connection and Linnartz and the Linnartz Firm cannot be held derivatively liable for Rork's acts. We disagree.

■ Burnap's consumer status must be determined by his relationship to the transaction, not to a particular defendant. *Arthur Andersen & Co.*, 945 S.W.2d at 815; *see Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649–50 (Tex.1996) (distinguishing between plaintiffs' status as consumers, which must be determined by their relationship to the transactions at

issue, and whether the alleged deceptive acts are actionable, which must be determined by whether the deceptive acts occurred in the context of the transaction); *see also Brown v. Bank of Galveston, Nat. Ass'n*, 963 S.W.2d 511, 516 n. 1 (Tex.1998) ("the DTPA does not impose vicarious liability based on innocent involvement with business transactions"). Thus, Burnap's consumer status does not turn upon whether Linnartz and the Linnartz Firm can be held derivatively liable for Rork's conduct in negotiating and drafting the First South Release.

■ Linnartz and the Linnartz Firm also contend Burnap was not a consumer as to the legal services Linnartz provided in the First South suit because he represented Daniel Linnartz and Max Burleson, not Burnap. However, we believe this argument misses the mark. Burnap does not contend he was a consumer of the legal services Linnartz provided to his brother and Burleson. Rather, Burnap contends he was (1) a former client to whom Linnartz owed certain duties as a matter of law, (2) a consumer of the legal services Linnartz provided in connection with the First South Release and the Release and Indemnity Agreement, and it was in the context of the negotiation and drafting of these agreements that Linnartz wrongfully failed to issue a conflicts letter and failed to advise him to seek independent counsel, and (3) Linnartz's conduct in the First South suit was unconscionable and a breach of fiduciary duty in light of his prior representation of Burnap. *See Burnap I*, 914 S.W.2d at 149.

Burnap's lack of consumer status is not conclusively established by the summary judgment record. Therefore, lack of consumer status cannot support the trial court's summary judgment against Burnap on his DTPA claims.

### LIABILITY OF THE LINNARTZ FIRM

Linnartz's and the Linnartz Firm's motion also argues the Linnartz Firm cannot

be held liable for wrongful acts committed before it came into existence. This may be. But it is a point we need not decide since Burnap's claims against the Linnartz Firm rest in part upon Linnartz's actions after the Firm's creation.

### LINNARTZ'S LIABILITY FOR RORK'S ACTS

Linnartz's and the Linnartz Firm's motion next contends "Linnartz cannot be held vicariously liable for actions solely committed by Rork nor does he have a duty to supervise Rork." We again disagree.

 As discussed above, Burnap's claims are not solely grounded on Rork's negligence in drafting the Release and Indemnity Agreement and the First South Release. Rather, Burnap's claims rest upon Linnartz's and his firm's failure to advise him that he did not represent him or, if they did, of their conflict of interest. Linnartz also argues a duty to supervise is precluded by Texas' Professional Corporation Act. We recognize, of course, "[a] shareholder of a professional corporation, *as such*, shall have no duty to supervise the manner or means whereby the officers or employees of the corporation perform their respective duties." TEX.REV. CIV. STAT. ANN. art. 1528e, § 5 (Vernon 1997) (emphasis added). But this does not preclude a duty to supervise or liability for negligently doing so. Rather, the Act expressly provides nothing in it "shall remove or diminish any rights at law that a person receiving professional service shall have against a person rendering professional service for errors, omissions, negligence, incompetence or malfeasance." *Id.* § 16. And we have not been cited to an opinion, nor have we found one, excluding attorneys from the general rule subjecting an employer to liability for negligent supervision of its employees. *Cf.* TEX. DISCIPLINARY R. PROF'L CONDUCT 5.01 ("Responsibilities of a Partner or Supervisory Lawyer"), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A

(Vernon 1998) (TEX. STATE BAR R. art. X, § 9).

### CAUSATION

 Linnartz and the Linnartz Firm also contend they are entitled to summary judgment because the record conclusively establishes "the moment that Willard Burnap joined the partnership and agreed to be bound by the Partnership Agreement, he agreed and became liable for the debt of any withdrawing partner, as well as for the debts of the partnership." Therefore, Linnartz and the Linnartz Firm argue, the record conclusively establishes their conduct did not cause Burnap's damages. We disagree.

The summary judgment record establishes Burnap's liability to First South and the RTC was not predicated on the Partnership Agreement or the law of partnerships. Rather, Burnap's liability arose out of the Release and Indemnity Agreement and the assignment of Daniel Linnartz's and Max Burleson's rights thereunder to the RTC and First South. Burnap was thus not sued by the RTC and First South until they acquired Daniel Linnartz's and Max Burleson's rights under the Release and Indemnity Agreement. In short, as the Fifth Circuit reasoned, Burnap was not held liable for the deficiency because he was a partner since this potential basis for liability was precluded by the First South Release; rather, Burnap was held liable for the deficiency because he signed the 1986 Release and Indemnity Agreement. *First South Savings Ass'n v. Linnartz*, No. 90–2875, slip op. at 7 (5th Cir. Dec.2, 1992). And it was in the context of the Release and Indemnity Agreement that Burnap alleged Linnartz and his firm wrongfully failed to either advise him that they did not represent him or issue a conflicts letter. *See Burnap I*, 914 S.W.2d at 150.

Linnartz and the Linnartz Firm also argue that Lawrence Linnartz's representation of Daniel Linnartz and Burleson in the First South deficiency suit could not

have caused Burnap's damages because the basis for Burnap's liability—the 1986 Release and Indemnity Agreement—had been in existence since it was drafted in 1986 and Daniel Linnartz attempted to invoke his right to indemnification before he contacted Lawrence Linnartz about representing him in the deficiency suit. However, these arguments do not address Burnap's allegations that Linnartz revealed confidential information during the course of his representation of his brother, and it was the release of this confidential information that enabled the deficiency suit against Burnap.

The summary judgment record does not conclusively establish Linnartz's and the Linnartz Firm's conduct was not causally related to Burnap's injury and damages. Accordingly, this ground cannot support the trial court's summary judgment against Burnap.

### LIMITATIONS

Finally, Linnartz and the Linnartz Firm contend Burnap's claims are barred by limitations. We again disagree.

■■■■ For purposes of our discussion, we assume, as Linnartz and the Linnartz Firm contend, all of Burnap's claims are legal malpractice claims, regardless of their denomination in his petition. *See Burnap I,* 914 S.W.2d at 148; *but see McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 792 (Tex.1999) ("an attorney can be subject to a negligent misrepresentation claim in a case in which she is not subject to a legal malpractice claim"); *Latham v. Castillo,* 972 S.W.2d 66, 68 (Tex.1998) ("Attorneys can be found to have engaged in

unconscionable conduct by the way they represent their clients."). Legal malpractice claims are governed by the two-year statute of limitations. *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988). It is well-settled in Texas that "the statute of limitations for legal malpractice actions does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his cause of action." *Id.* at 646. At trial, the burden of proving this date is on the plaintiff. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988). But in the context of a motion for summary judgment under Rule 166a(c), it is the "defendant [who] ... must prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered or should have discovered the nature of the injury." *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990).[2]

Thus, in this summary judgment context, Linnartz and the Linnartz Firm were required to conclusively establish the date upon which Burnap knew or should have known of the alleged wrongful acts and resulting injury and that this date was more than two years before he filed suit on November 27, 1991. Linnartz and the Linnartz Firm failed to meet this heavy burden, as this court recognized in Burnap's first appeal:

> Burnap should have suspected in February 1990 when First South Savings sued him that he was not insulated from liability on the note executed by [the partnership]. In October 1990 when judgment was entered against Burnap for the $1.3 million deficiency, Burnap's sus-

2. We thus reject Linnartz's and the Linnartz Firm's argument that the accrual of Burnap's claims is governed by the legal injury rule because Burnap failed to plead and prove sufficient facts to require application of the discovery rule. In support of their argument, Linnartz and the Linnartz Firm cite *Black v. Wills,* 758 S.W.2d 809, 815–16 (Tex.App.— Dallas 1988, no writ). However, the *Black* Court did not hold the accrual of legal mal-

practice claims is governed by the legal injury rule. Rather, the court erroneously stated in dicta that the plaintiff and summary judgment respondent "had the burden of pleading and proving his affirmative defenses to the statute of limitations." *Id.* at 812. In fact, as stated above, the respondent to a traditional summary judgment has no burden to prove his limitations defense. *Burns,* 786 S.W.2d at 267.

picions certainly would have been confirmed. He sent a demand letter to Lawrence Linnartz a month after the judgment, stating his claim for malpractice. Although Burnap timely sued Linnartz and the Linnartz firm in 1991, he did not join Rork and the McCamish firm as defendants until September 1993. Burnap failed to timely institute his suit against William Rork and the McCamish firm....

*Burnap I,* 914 S.W.2d at 148; *see Murphy,* 964 S.W.2d at 271–72 (recognizing the plaintiffs' accounting malpractice claims had accrued by the date they received "the deficiency notice, when the IRS [took] a final, formal position" and may have accrued earlier, but this fact was not conclusively established by the summary judgment evidence). As noted above, and as both parties concede, the record in this appeal is virtually identical to that in *Burnap I.*

■■■ Linnartz and the Linnartz Firm argue Burnap should have discovered the facts establishing the elements of his cause of action in January 1988, when Rork told Walter Burnap that Willard Burnap might be held personally liable on the First South note despite the 1986 Release and Indemnity Agreement, or at the latest in September 1989 when Burnap received Daniel Linnartz's letter asserting rights under the 1986 Release and Indemnity Agreement. However, at neither point in time had Burnap even suffered an injury. Indeed, until Burleson and Daniel Linnartz assigned their rights under the 1986 Release to First South in January 1990, Burnap was not and could not even have been sued by First South or the RTC. Under these circumstances, we cannot conclude the summary judgment record conclusively establishes Burnap discovered or should have discovered the facts establishing the elements of his cause of action by November 27, 1989. Limitations thus cannot support the trial court's summary judgment.

## CONCLUSION

Texas does not recognize a cause of action for the negligent infliction of emotional distress. The trial court thus properly granted a summary judgment against Willard Burnap on this claim, and its judgment on this claim is affirmed. But in all other respects the trial court's judgment is reversed. Linnartz and the Linnartz Firm failed to establish the undisputed facts and governing law entitled them to a summary judgment on Burnap's remaining claims. We therefore remand this case to the trial court for trial.

Dissenting opinion by ALMA L. LÓPEZ, Justice.

LOPEZ, Justice, dissenting.

I dissent because I believe Willard Burnap's claims are barred by limitations. Although the majority contends that the appellees failed to meet their burden to establish the date upon which Burnap knew or should have known · about the alleged wrongful acts and resulting injury, the undisputed facts establish more than one instance which should have placed Willard on notice of his potential liability in this case—that he would likely be a target for a collection suit based on his former interest in the partnership which defaulted on the note. Under the "injury" rule, a cause of action sounding in tort generally accrues when the tort is completed, that is, the act committed and damage suffered. *McClung v. Johnson,* 620 S.W.2d 644, 646 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.), *citing Atkins v. Crosland,* 417 S.W.2d 150, 152 (Tex.1967). This is the date of legal injury and the statute of limitations begins to run at that time. *Pack v. Taylor,* 584 S.W.2d 484, 486 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.). The date of the legal injury is not the time it is discovered or the date when actual damage is fully ascertained. *Id.; Black v. Wills,* 758 S.W.2d 809, 816 (Tex.App.—Dallas 1988, no writ). In a legal malpractice case, the attorney's conduct must raise only a risk of harm to the client's legally protected interest for the tort to accrue; the harm need not be

finally established or an inevitable consequence of the conduct. *Zidell v. Bird,* 692 S.W.2d 550, 557 (Tex.App.—Austin 1985, no writ). The limitations period begins to run as soon as the plaintiff discovers or should discover any harm, however slight, resulting from the negligence of the defendant. *Zidell,* 692 S.W.2d at 555. If the plaintiff does not sue within two years of the discovery of minor injury but waits until the injuries become substantial, the suit will be time barred. *See id.* (citing *Robertson v. Texas & N.O.R. Co.,* 122 S.W.2d 1098, 1099 (Tex.Civ.App.—San Antonio 1938, writ ref'd)); *American Medical Electronics, Inc. v. Korn,* 819 S.W.2d 573, 577 (Tex.App.—Dallas 1991, writ denied).

In the instant case, Willard signed the release and indemnification for Danny Linnartz on July 31, 1986, in his capacity as a partner. That is the act by which he incurred potential personal liability for the partnership debts to the withdrawing partner, Danny. The next ascertainable date of legal injury occurred when Willard signed the First South release in January 1988. The January 1988 discussion of Walter with Rork should also have put Willard on notice that he could face personal liability by virtue of his former partnership status. In addition, Willard should have known by July 1989[1] when Danny sent Willard and Walter, via certified mail, a letter asserting his indemnity rights under the 1986 release. Thus, there were at least three occasions whereby Willard should have known of his potential liability on the note which occurred before November of 1989. A demand for indemnification would have put a reasonably prudent person on notice that the prior legal services he received may not shield him from personal liability. Willard did not sue Linnartz and his firm until November 1991, more than two years later.

Willard argues that his cause of action did not accrue at any of the times he learned that he could be potentially personally liable on the note, or when he received the demand for indemnity on the note. Rather, he contends that his claim did not accrue until he learned that he might have a claim against Linnartz and his firm for legal malpractice. In a legal malpractice, negligent advice case, however, the invasion of the plaintiff's legally protected interest occurs at the time that the plaintiff receives the incomplete or otherwise improper advice. *See American Medical Electronics, Inc. v. Korn,* 819 S.W.2d at 577. I disagree with Willard's position that his cause of action did not accrue until the federal judgment imposed personal liability on him. The alleged conflict of interest should have been apparent to Willard at the time Linnartz and his firm answered the First South/FDIC's lawsuit on behalf of Danny Linnartz and Max Burleson, when Walter Burnap, Lester Kelly and the partnership were also named defendants in August of 1989. Willard's malpractice claims accrued no later than Linnartz's appearance in the federal litigation on behalf of his brother after Danny had sent the demand letter. The combination of those two events clearly put Willard on notice that Linnartz was representing an adverse party.

---

1. Although the letter was sent in July, Willard did not sign for the letter until September 9, 1989. Both the July or September date are outside the two-year limitations period.