Kimberly **RICE**, et al., **Appellants,**

v.

**LOUIS A. WILLIAMS &
ASSOCIATES, INC.,
et al., Appellees.**

**No. 06–01–00140–CV.**

Court of Appeals of Texas,
Texarkana.

Submitted May 16, 2002.

Decided Sept. 13, 2002.

James B. Lewis, Scott J. Davenport, Glover, Miller, Lewis & Prebeg, PC, John W. Stevenson Jr., John C. Schwambach Jr., Stevenson & Ammons, Houston, for Appellants.

Gregory R. Ave, Mark E. Smith, Josh M. Snell, Touchstone, Bernays, et al., Michael A. Hummert, Alexander N. Beard, Bishop & Hummert, PC, Dallas, for Appellees.

Before GRANT, ROSS, and CORNELIUS,* JJ.

* Chief Justice William J. Cornelius, Retired, Sitting by Assignment

## OPINION

Opinion by Justice ROSS.

Kimberly Rice, acting individually and as next friend of Kara Garrett, Gala Rice, and Kourtney Martin (collectively, the Rice Appellants), along with Tri–State Pipe & Equipment, Inc., Tri–State Exploration & Production, Inc., Tri–State Well Services, Inc., James Tellgren, and James Stuart (collectively, the Tri–State Appellants) appeal the summary judgment granted in favor of Louis A. Williams & Associates, Inc. (Williams) and Agnor Insurance Agency, Inc. (Agnor). Appellants sued Williams, Agnor, and Southern County Mutual Insurance Company,[1] contending they failed to provide the legally required amount of insurance for a tractor-trailer owned by Tri–State Exploration and leased to Tri–State Well. With respect to Williams and Agnor, Appellants alleged causes of action for negligence, breach of fiduciary duty, and breach of contract. The trial court granted Williams and Agnor's motion for summary judgment, which was based on the statute of limitations.

On appeal, Appellants contend the trial court erred in granting Williams and Agnor's motion for summary judgment. They also contend the trial court abused its discretion in overruling their motion for a continuance and in overruling their objections to Williams and Agnor's summary judgment proof.

### Factual Background

Appellants sued Williams and Agnor, alleging Southern County issued a commercial vehicle insurance policy with coverage up to $100,000.00 to Tri–State Pipe through insurance agents Williams and Agnor, through whom the Tri–State Appellants regularly purchased insurance.

1. Appellants later nonsuited Southern County.

Before the policy was written, the Texas Railroad Commission issued a requirement that all commercial vehicles operating in Texas have minimum insurance coverage of $500,000.00. Later, Tri–State Exploration purchased additional tractor-trailers and obtained, through Williams and Agnor, an endorsement to Tri–State Pipe's policy that insured the additional vehicles for up to $100,000.00.

On May 15, 1995, one of Tri–State Exploration's tractor-trailers was involved in a major collision with the Rice Appellants. The Rice Appellants suffered severe and permanent injuries in the collision and sued the Tri–State Appellants for negligence. On May 22, 1995, Williams informed Tri–State Pipe that the coverage limit of its policy was $100,000.00 and that Southern County would not be responsible for settlement of claims or any judgment for claims in excess of $100,000.00. On June 9, 1995, Williams informed Stuart (the owner of the Tri–State entities) and Tri–State Pipe that "[p]reliminary indications are that [the Rice Appellants'] injuries, special damages and general damages could exceed the [$100,000.00] limit."

On July 24, 1995, Williams notified Tri–State Exploration that Southern County would not tender a defense to them in the Rice Appellants' negligence suit. In the same letter, Williams indicated Southern County would defend Tri–State Pipe and Tellgren (the driver of the tractor-trailer). On January 8, 1996, Williams notified Stuart that Southern County would tender a defense to him under a reservation of rights. On July 2, 1996, Williams notified Tellgren that Southern County would continue in his defense under a reservation of rights.

On August 20, 1996, Tri–State Exploration and Tri–State Well demanded Southern County provide them a defense in the Rice Appellants' negligence suit. On Octo-

ber 2, 1996, Southern County agreed, under a reservation of rights, to provide such defense under the condition that Tri–State Exploration and Tri–State Well pay half their attorney's fees. On May 22, 1997, Tri–State Exploration and Tri–State Well agreed to the terms proposed by Southern County, as indicated by their attorney's signature on a letter faxed to Southern County's attorney.

Beginning July 8, 1996, and culminating May 5, 1997, Southern County made four offers to settle the Rice Appellants' claims for $95,000.00, the amount remaining under the policy. Beginning July 19, 1996, the Rice Appellants rejected Southern County's settlement offers and demanded $495,000.00 to settle their claims. On July 11, 1997, the Rice Appellants obtained a judgment in excess of $2.25 million against the Tri–State Appellants, jointly and severally.

On September 6, 1996, while the Rice Appellants' negligence suit was pending, Southern County filed a declaratory judgment action against Tri–State and the Rice Appellants, seeking a determination of how much coverage was available under the policy. On August 19, 1998, the trial court granted summary judgment in favor of Southern County, ruling there was $100,000.00 available under the policy. The trial court also permanently enjoined Tri–State and the Rice Appellants "from filing any other claim or action against Southern County ... directly or indirectly, involving the insurance proceeds and claims at issue in this litigation or in connection with the underlying suit and/or the motor vehicle accident made the basis of the underlying suit." On December 2, 1999, this Court affirmed the trial court's ruling with respect to the coverage available under the policy, but held the anti-suit injunction was improper. *Tri–State Pipe & Equip., Inc. v. S. County Mut. Ins. Co.,*

8 S.W.3d 394, 400, 402 (Tex.App.-Texarkana 1999, no pet.).

Appellants filed suit against Williams and Agnor on June 3, 1999. The trial court granted summary judgment on May 18, 2001.

## Standard of Review

Williams and Agnor moved for summary judgment under Tex.R. Civ. P. 166a(b). To prevail on such a motion, the movant must establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). Summary judgment for a defendant is proper when such defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). We indulge every reasonable inference and resolve any doubt in the nonmovant's favor. *Id.* On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.*

■ Because Williams and Agnor moved for summary judgment on the ground of the statute of limitations, they must have (1) conclusively proved when the cause of action accrued, and (2) negated the discovery rule, if it applies and was pled or otherwise raised, by proving as a matter of law there is no genuine issue of material fact about when Appellants discovered, or in the exercise of reasonable diligence should have discovered, their cause of action. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). If Williams and Agnor established that the action was barred by the statute of limitations, Appellants must then have adduced summary judgment proof raising a fact issue in avoidance of the statute of limitations. *See id.*

## The Limitations Periods

We first address the relevant limitations period for each of Appellants' claims. A cause of action for negligence is governed by a two-year statute of limitations. Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon Supp.2002). A cause of action for breach of contract is governed by a four-year statute of limitations. Tex. Civ. Prac. & Rem.Code Ann. § 16.004(a)(3) (Vernon Supp.2002). Appellants contend a cause of action for breach of fiduciary duty is governed by a four-year statute of limitations; Williams and Agnor contend a two-year statute of limitations applies.

Before 1999, there was a split of authority among the courts of appeals regarding the applicable statute of limitations for breach of fiduciary duty claims.[2] In 1999,

---

**2.** *Compare McGuire v. Kelley*, 41 S.W.3d 679, 682 (Tex.App.-Texarkana 2001, no pet.) (four years when combined with fraud cause of action); *Chandler v. Chandler*, 991 S.W.2d 367, 394 (Tex.App.-El Paso 1999, pet. denied) (four years); *In re Estate of Herring*, 970 S.W.2d 583, 587 (Tex.App.-Corpus Christi 1998, no pet.) (four years); *Rowe v. Rowe*, 887 S.W.2d 191, 201 (Tex.App.-Fort Worth 1994, writ denied) (four years); *Spangler v. Jones*, 797 S.W.2d 125, 132 (Tex.App.-Dallas 1990, writ denied), *with Maxson v. Travis County Rent Account*, 21 S.W.3d 311, 319 (Tex.App.-Austin 1999, pet. dism'd by agr.) (two years); *Hendricks v. Thornton*, 973 S.W.2d 348, 364 (Tex.App.-Beaumont 1998, pet. denied) (two years); *Farias v. Laredo Nat'l Bank*, 985 S.W.2d 465, 471 (Tex.App.-San Antonio 1997, no pet.) (two years); *Dickson Constr., Inc. v. Fid. & Deposit Co.*, 960 S.W.2d 845, 849 (Tex.

the Texas Legislature amended Section 16.004 of the Texas Civil Practice and Remedies Code to establish a four-year statute of limitations for breach of fiduciary duty. *See* Act of May 26, 1999, 76th Leg., R.S., ch. 950, § 1, 1999 Tex. Gen. Laws 3687.

Section 2 of the Act provides, "The intent of this Act is to clarify existing law by resolving a conflict in case law concern-ing the applicable statute of limitations for actions for fraud and breach of fiduciary duty." *Id.* at § 2(a). Further, the bill analysis for House Bill 2456 indicates the Legislature intended to codify the holding of the Texas Supreme Court in *Williams v. Khalaf,* 802 S.W.2d 651 (Tex.1990), that "Section 16.004 ... [establishes] a four-year statute of limitations for fraud and breach of fiduciary duty." [3] Tex. H.B. 2456, 76th Leg., R.S. (1999).

---

App.-Texarkana 1997, no pet.) (two years); *Smith v. Little,* 903 S.W.2d 780, 786 (Tex. App.-Dallas 1995), *aff'd in part & rev'd in part on other grounds,* 943 S.W.2d 414 (Tex.1997) (two years); *Smith v. Chapman,* 897 S.W.2d 399, 402 (Tex.App.-Eastland 1995, no writ) (two years); *Redman Indus., Inc. v. Couch,* 613 S.W.2d 787, 789 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.) (two years).

**3.** An examination of *Williams v. Khalaf,* 802 S.W.2d 651 (Tex.1990), does not buttress the Legislature's apparent conclusion. In *Williams,* the Texas Supreme Court was not confronted with the issue of the appropriate limitations period for breach of fiduciary duty claims, but only with the question of the appropriate limitations period for fraud claims. At that time, there was no statute of limitations directly applying to fraud claims, just as there was no statute of limitations directly applying to breach of fiduciary duty claims before 1999. *See id.* at 654.

Citing *Gordon v. Rhodes & Daniel,* 102 Tex. 300, 116 S.W. 40, 41–42 (1909), the court characterized a fraud claim as an action on a debt not evidenced by a writing, which at the time *Gordon* was written was governed by a two-year statute of limitations, but at the time *Williams* was written was governed by a four-year statute of limitations. *Williams,* 802 S.W.2d at 654, 657. Therefore, the court held a four-year statute of limitations applied to fraud claims. *Id.* at 657.

Those courts before *Williams* that held breach of fiduciary duty claims were governed by a two-year statute of limitations did so on the theory that those claims are actions in tort rather than actions for a debt not evidenced by a writing. *See Black v. Wills,* 758 S.W.2d 809, 814 (Tex.App.-Dallas 1988, no writ); *Redman Indus., Inc. v. Couch,* 613 S.W.2d 787, 789 (Tex. Civ. App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.). Arguably,

the Texas Supreme Court's reasoning in *Williams*—that fraud is an action for a debt not evidence by a writing—would apply to breach of fiduciary duty.

However, the court did not extend its reasoning regarding fraud claims to breach of fiduciary duty claims. In fact, the court cautioned, "The process of making analogies to common law forms of action to select a general limitation provision to apply is imperfect at best, and also has produced different limitation periods for very similar causes of action." *Williams,* 802 S.W.2d at 656.

The court may have made an oblique reference to breach of fiduciary duty in *Williams* in discussing the continued vitality of its holding in *Gordon. See Williams,* 802 S.W.2d at 654. In *Williams,* the court cited the Houston court's use of *Gordon* as authority in *Andes v. Cagle,* 468 S.W.2d 513 (Tex.Civ.App.-Houston [14th Dist.] 1971, writ ref'd n.r.e.). In *Andes,* a husband sued his former wife and an investment company, claiming they deprived him of his interest in two investment accounts the couple established. *Andes,* 468 S.W.2d at 514–15. Citing *Gordon,* the court held the claim against the investment company was barred because "misconduct of an agent" was governed by Article 5526, a predecessor to Section 16.004. *Id.* at 516–17.

However, the precise nature of the agent's alleged misconduct in *Andes* is unclear. Was it fraud (i.e., a debt not evidenced by a writing) or conversion? At the time *Andes* was written, a cause of action on a debt not evidenced by a writing and a cause of action for conversion were both governed by Article 5526. *See Williams,* 802 S.W.2d at 656; *Andes,* 468 S.W.2d at 516. In 1979, the Legislature consolidated the statute of limitations for all actions on debts into Article 5527. *See* Act of May 27, 1979, 66th Leg., R.S., ch. 716, § 1, 1979 Tex. Gen. Laws 1768 (repealed

Our research revealed no cases after *Williams* in which a court held fraud was governed by a two-year statute of limitations. But, as mentioned previously, there was a split among the courts concerning the statute of limitations for breach of fiduciary duty claims. Therefore, if the Legislature was attempting to resolve a conflict among the courts, as Section 2 of the Act amending Section 16.004 indicates, then it was most likely the conflict regarding the statute of limitations for breach of fiduciary duty claims the Legislature was attempting to resolve. Thus, the legislative history of Section 16.004(a)(5) demonstrates the Legislature's understanding that Section 16.004 always applied a four-year statute of limitations to breach of fiduciary duty claims.

■ Further, even if the four-year statute of limitations did not always apply to breach of fiduciary duty claims, as the legislative history of Section 16.004(a)(5) indicates it did, Section 16.004(a)(5) still governs the present case. Generally, a statute is presumed to operate prospectively unless expressly made retrospective. Tex. Gov't Code Ann. § 311.022 (Vernon 1998); *see also* Tex. Const. art. I, § 16. Texas courts apply statutes retrospectively only if "it appears by fair implication from the language used that it was the intention of the Legislature to make it applicable to both past and future transactions." *State*

*v. Humble Oil & Ref. Co.*, 141 Tex. 40, 169 S.W.2d 707, 708–09 (1943). Further, a statute may operate retrospectively only when no impairment of vested rights results. *Merchs. Fast Motor Lines, Inc. v. R.R. Comm'n*, 573 S.W.2d 502, 504 (Tex. 1978).

■ On the other hand, changes in statutes affecting remedies or procedures may be applied retrospectively. *Tyra v. City of Houston*, 822 S.W.2d 626, 627 (Tex. 1991); *Holder v. Wood*, 714 S.W.2d 318, 319 (Tex.1986). This is because a litigant does not have a vested right in a procedural remedy. *Merchs. Fast Motor Lines, Inc.*, 573 S.W.2d at 505. Statutes of limitations are procedural, *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex.1999), and bar the remedy by which one party seeks to enforce his or her substantive rights. *Jackson v. Thweatt*, 883 S.W.2d 171, 176 (Tex.1994).

■ The above exception has its own exception. A procedural statute cannot be applied in a suit pending at the time it becomes effective if to do so would destroy or impair rights that had become vested after the act became effective. *Baker Hughes, Inc.*, 12 S.W.3d at 4 (quoting *Wilson v. Work*, 122 Tex. 545, 62 S.W.2d 490, 490 (1933) (per curiam)). Consequently, after a cause of action is barred by a statute of limitations, a defendant has a vested right to rely on such a statute as a

1985) (current version at Tex. Civ. Prac. & Rem.Code Ann. §§ 16.003, 16.004 (Vernon Supp.2002)). Article 5527 was later incorporated into Section 16.004. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3252.

*Andes* itself is unclear on the nature of the agent's alleged wrongdoing. In holding that Article 5526 applied, the court of appeals cited three cases holding Article 5526 barred causes of action for conversion and one case (*Gordon* ) holding Article 5526 barred a cause of action for fraud not evidenced by a writing. *Andes*, 468 S.W.2d at 516–17 (citing *Las Men-*

*dozas, Inc. v. Powell*, 368 F.2d 445 (5th Cir. 1966) (conversion and, perhaps, breach of fiduciary duty); *Gordon*, 102 Tex. 300, 116 S.W. 40 (fraud); *Adams v. San Antonio Life Ins. Co.*, 185 S.W. 610 (Tex.Civ.App.-Dallas 1916, writ ref'd) (conversion); *Mut. Life Ins. Co. v. Garland*, 23 Tex.Civ.App. 380, 56 S.W. 551 (1900, no writ) (conversion)).

Nevertheless, to the extent the Texas Supreme Court cited *Andes* to show *Gordon* was still good law, it may have suggested "misconduct of an agent," which would encompass breach of fiduciary duty, is governed by the same statute of limitations as that for fraud.

defense if his or her suit is pending at the time the statute of limitations became effective. *Id.*

■ In the present case, Appellants' suit was pending August 30, 1999, the date the amendment to Section 16.004 became effective. Therefore, if Appellants' breach of fiduciary claim was barred by a two-year statute of limitations, as Williams and Agnor contend, the amendment could not have operated to enlarge the statute of limitations from two years to four years. But, as mentioned previously, whether a breach of fiduciary duty claim was governed by a two-year or four-year statute of limitations was far from a settled issue at the time Appellants filed their suit. Therefore, Williams and Agnor did not have a vested right to rely on a two-year statute of limitations. Appellants' breach of fiduciary duty claim is governed by a four-year statute of limitations.

### Accrual of Causes of Action

■ The main dispute in this case is when Appellants' causes of action accrued. In *Atkins v. Crosland,* 417 S.W.2d 150 (Tex.1967), the Texas Supreme Court held a taxpayer's negligence cause of action against his tax accountant accrued when the taxpayer received a notice of deficiency from the Internal Revenue Service (IRS). The court explained that, because the accountant's method of reporting income was not "in itself the type of unlawful act which, upon its commission, would set the statute in motion," the taxpayer did not suffer injury until he received the deficiency notice. *Id.*

In *Murphy v. Campbell,* 964 S.W.2d 265, 269–70 (Tex.1997), another accountant malpractice case, the taxpayers contended limitations began to run when all litigation in tax court was completed and the IRS issued an assessment of taxes; the accountants contended limitations began to run

when the taxpayers knew or should have known of the faulty advice and no later than when the IRS issued a formal deficiency notice. The Texas Supreme Court held that a person suffers legal injury from faulty professional advice when the advice is taken, but that the discovery rule may apply to delay accrual of a cause of action because of the difficulty a lay person has in knowing of the fault in the advice. *Id.* at 270.

In *Murphy,* the court held the cause of action did not accrue when the injury became certain, as the taxpayers contended, but when the taxpayers knew or should have known of their injury. *Id.* at 271. Under the facts in *Murphy,* as in *Atkins,* the taxpayers obtained such knowledge when the IRS issued a formal deficiency notice. *Id.* However, the court stated such knowledge could be obtained earlier, e.g., if the taxpayers sought other opinions on receiving an audit notice. *Id.*

In fact, responding to a dissenting opinion, the court stated, "The fact that the plaintiff's actual damages may not be fully known until much later does not affect the determination of the accrual date for alleged accounting malpractice any more than it does for legal malpractice." *Id.* at 273. The court also stated, in response to a dissenting opinion, which contended limitations should begin when litigation in tax court was concluded, "While it may be necessary to abate a malpractice suit pending resolution of a dispute with the taxing authority, we view that procedure as preferable to holding that limitations on a plaintiff's claim begins to run when plaintiff decides it should." *Id.*

In *Johnson & Higgins v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 512 (Tex.1998), an oil trading company sought to insure its expected profit from an oil shipment and against the possibility its primary insur-

ance carrier would fail to pay potential claims involving that shipment. The oil trading company sued its insurance agent over two years after the insurance company denied coverage under certificates of insurance written by the agent. *Id.*

The Texas Supreme Court stated, "A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Id.* at 514. The court held the cause of action accrued when the insurance company denied coverage because all facts required for a cause of action against the agent existed at that time. *Id.*

In support of its contention that the cause of action accrued when the litigation against the insurance company was completed, the oil trading company cited *Atkins*. *Id.* at 515. In contrast with its position in *Murphy*, in which it held the taxpayers were injured when they took their accountants' faulty professional advice, the court stated that in *Atkins* the taxpayer was injured when he received the deficiency notice from the IRS. *Id.* The court then observed the oil trading company in *Johnson & Higgins* was also injured when its claim was denied because it then had sufficient facts available to seek a judicial remedy against its agent. *Id.*

Williams and Agnor contend a cause of action accrues when a party is confronted with a specific and concrete risk of harm to the party's interest, citing *State Farm Life Ins. Co. v. Swift*, 129 F.3d 792, 795–96 (5th Cir.1997), and *Hoover v. Gregory*, 835 S.W.2d 668, 672–74 (Tex.App.-Dallas 1992, writ denied). The origin for the "risk of harm" language is found in *Zidell v. Bird*, 692 S.W.2d 550 (Tex.App.-Austin 1985, no writ), a legal malpractice case.

In *Zidell*, the court discussed the "legal injury rule," distinguishing between two types of conduct: "lawful acts," or those

cases in which the defendant's conduct is not wrongful in itself, giving the plaintiff no immediate right of action, and "unlawful acts," or those cases in which the defendant's conduct is wrongful in itself, giving the plaintiff an immediate right of action. *Id.* at 554–55. In "unlawful acts" cases, the injury is immediate and the cause of action accrues then; in "lawful acts" cases, the cause of action accrues when an invasion of the plaintiff's interests occurs, i.e., when the plaintiff is injured. *Id.* at 555.

The *Zidell* court states:

A familiar analytical *assumption* in [cases, beginning with *Atkins v. Crosland*, that have applied the legal injury rule] is that the defendant's act was or was not originally "unlawful," with no *explanation* being given of how that assumption was justified under applicable law.

*Zidell*, 692 S.W.2d at 556. Such an assumption was in play in *Murphy* when the Texas Supreme Court held, "A person suffers legal injury from faulty professional advice when the advice is taken." *Murphy*, 964 S.W.2d at 270. *Zidell* then goes on to state:

The common ground in these cases [that have applied the legal injury rule] is, however, that the plaintiff's cause of action did not accrue until a specific event, occurring subsequent to the date of the defendant's conduct and caused thereby, made it apparent that some legally protected interest in the plaintiff had indeed been exposed to a *specific and concrete risk of harm* which had theretofore remained only a logically possible consequence of the defendant's conduct.

*Zidell*, 692 S.W.2d at 556 (emphasis added). This "risk of harm" language has been applied in numerous other Texas

cases, all of which involve professional malpractice.[4]

But the "risk of harm" language was not utilized in *Murphy*, which also involved professional malpractice.[5] Rather, the *Murphy* court held a person suffers legal injury from faulty professional advice, not when it is apparent there is a risk of harm to his or her interests, but when the advice is taken, even though the discovery rule may delay accrual of a cause of action until the person knows or should know of his or her injury. *Murphy*, 964 S.W.2d at 270–71. In contrast, in *Johnson & Higgins*, a case not involving professional malpractice or the discovery rule, the court held the cause of action accrues when facts come into existence that authorize a claimant to seek a judicial remedy. *Johnson & Higgins*, 962 S.W.2d at 514.

Williams and Agnor contend Appellants' causes of action accrued as early as May 22, 1995, the day on which Williams informed the Tri–State Appellants that Southern County would not be responsible for amounts in excess of the $100,000.00 policy limit. They also contend Southern County confirmed its position in numerous communications with the Tri–State Appellants, in settlement talks with the Rice Appellants, and in its refusal to tender a defense to Tri–State Exploration and Tri–State Well. They contend Appellants' causes of action accrued no later than September 6, 1996, the date on which Southern County filed its declaratory judgment action.

Appellants contend their causes of action did not accrue until May 27, 1997, the day on which the judgment, which was in excess of the $100,000.00 policy limit, was signed in the Rice Appellants' suit against the Tri–State Appellants. Until that day, they contend, the fact of an injury had not been established because there was not a judgment in the Rice Appellants' negligence suit.

When there is no outright denial of a claim, the exact date of accrual of a cause

4. *See Eiland v. Turpin, Smith, Dyer, Saxe & McDonald*, 64 S.W.3d 155, 158–59 (Tex.App.-El Paso 2001, no pet.) (legal malpractice); *Brents v. Haynes & Boone, L.L.P.*, 53 S.W.3d 911, 914–15 (Tex.App.-Dallas 2001, pet. denied) (legal malpractice); *Burnap v. Linnartz*, 38 S.W.3d 612, 624 (Tex.App.-San Antonio 2000, no pet.) (legal malpractice); *Goggin v. Grimes*, 969 S.W.2d 135, 137 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (legal malpractice); *Hall v. Stephenson*, 919 S.W.2d 454, 465 (Tex.App.-Fort Worth 1996, writ denied) (legal malpractice); *Sutton v. Mankoff*, 915 S.W.2d 152, 157 (Tex.App.-Fort Worth 1996, writ denied) (legal malpractice); *Bankr. Estate of Rochester v. Campbell*, 910 S.W.2d 647, 651 (Tex.App.-Austin 1995), *rev'd on other grounds sub nom., Murphy v. Campbell*, 964 S.W.2d 265 (Tex.1997) (accountant malpractice); *Ponder v. Brice & Mankoff*, 889 S.W.2d 637, 642–43 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (legal malpractice); *Hoover v. Gregory*, 835 S.W.2d 668, 673 (Tex.App.-Dallas 1992, writ denied) (professional malpractice); *Gulf Coast Inv. Corp. v. Brown*, 813 S.W.2d 218, 221 (Tex.App.-Houston [14th Dist.] 1991), *rev'd on other grounds*, 821 S.W.2d 159 (Tex.1991) (legal malpractice); *Black v. Wills*, 758 S.W.2d 809, 816 (Tex.App.-Dallas 1988, no writ) (legal malpractice); *Willis v. Maverick*, 723 S.W.2d 259, 261 (Tex.App.-San Antonio 1986), *aff'd*, 760 S.W.2d 642 (1988) (legal malpractice).

5. In fact, the Texas Supreme Court largely repudiated the risk of harm language when, in *Murphy*, it wrote in response to a dissenting opinion:

[The] dissent mischaracterizes our application of the discovery rule as holding that "an accounting malpractice cause of action accrues when a taxpayer knows or should know of a *mere risk* of injury." ... As in all discovery rule cases, a cause of action accrues when the plaintiff knows or reasonably should know that he has been legally injured by the alleged wrong, however slightly.

*Murphy*, 964 S.W.2d at 273 (quoting *Murphy*, 964 S.W.2d at 274 (Spector, J, dissenting)).

of action becomes more difficult to ascertain and should be a question of fact to be determined on a case-by-case basis. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 n. 2 (Tex.1990). Recently, in *All–Tex Roofing, Inc. v. Greenwood Ins. Group, Inc.*, 73 S.W.3d 412 (Tex.App.-Houston [1st Dist.] 2002, no pet. h.), the Houston Court of Appeals addressed a similar issue. In that case, the appellees arranged to provide insurance for the appellant with a company that ultimately became insolvent. *Id.* at 414. Later, a judgment in a personal injury suit was rendered against the appellant, which it contended would have been covered under the policy written by the insolvent insurer. *Id.*

In reversing summary judgment for the appellees based on limitations, the court of appeals held the appellant's cause of action did not accrue until judgment was rendered in the underlying personal injury suit. *Id.* at 415. Until then, the court reasoned, the appellant did not know what the amount of the eventual claim would be, if any, and had not yet filed a claim. *Id.* The court concluded *Johnson & Higgins* was distinguishable because, in that case, the oil trading company knew the amount of its lost profit and had filed a claim, which had been denied. *Id.*

We are persuaded by the Houston court's reasoning in *All Tex Roofing*. Though Williams and Agnor correctly observe that a cause of action accrues even when the extent of damages is not fully known, that rule says nothing about the accrual of a cause of action when the injury has not occurred. Here, Appellants knew both the fact of the injury and the extent of the damages at the same time, i.e., when the judgment was rendered in the Rice Appellants' negligence suit. They could not have brought suit against Williams and Agnor before then because

there was always a chance, however remote, that judgment would be rendered for less than $100,000.00, meaning they would have had no damages.

*Murphy* is distinguishable. In *Murphy*, the Texas Supreme Court held that the taxpayers' legal injury occurred when they took their accountants' faulty advice, but that their cause of action accrued under the discovery rule when they knew or should have known of their injury. *Murphy*, 964 S.W.2d at 270–71. The court held the taxpayers would have had a cause of action when they took their accountants' advice, even though their injury was not completely certain and even though they might have had to abate their suit while their ultimate tax liability was litigated in tax court. *See id.* at 271, 273.

This case is more like *Johnson & Higgins*, which did not turn on the application of the discovery rule. If it had, then the oil trading company would have been injured when its insurance agent failed to obtain the proper insurance, and its cause of action would have accrued when it knew or should have known of its injury. In that instance, the oil trading company's cause of action may still have accrued when the insurance company rejected its claim, but the court's reasoning would have been different.

Like the oil trading company in *Johnson & Higgins*, Appellants in the present case were not injured when Williams and Agnor purportedly failed to obtain the proper insurance. Had the Tri–State Appellants discovered the deficiency in their insurance coverage before the Rice Appellants were injured, they would not have had a cause of action against Williams and Agnor because they would have suffered no damages. In short, it was when the judgment was rendered in the Rice Appellants' negligence suit that facts came into existence authorizing Appellants to obtain a judicial

remedy. *See Johnson & Higgins,* 962 S.W.2d at 514.

Ultimately, as the *All–Tex Roofing* court also concluded, the facts in *Johnson & Higgins* are distinguishable from the present case. In *Johnson & Higgins,* the oil trading company knew of its injury when its claim under its insurance policy was denied. Here, as in *All–Tex Roofing,* there is no summary judgment proof Appellants made a claim against the insurance policy or that Southern County denied such a claim.

There is summary judgment proof that the Tri–State Appellants were aware of Southern County's position that there was only $100,000.00 of available coverage under the policy and that the Rice Appellants' injuries could exceed $100,000.00. But, as in *All–Tex Roofing,* Appellants had not made a claim in excess of $100,000.00. Therefore, they had suffered no injury.

Agnor contends our holding in *Sabine Towing & Transp. Co. v. Holliday Ins. Agency, Inc.,* 54 S.W.3d 57 (Tex.App.-Texarkana 2001, pet. denied), stands for the proposition that Appellants' cause of action accrued when Williams and Agnor violated their purported duty to obtain the proper insurance. In *Sabine,* a shipowner sued an insurance agent under theories of negligent misrepresentation and violations of Article 21.21 of the Texas Insurance Code stemming from the insurance agent's representation that the shipowner's subcontractor had an insurance policy that would insure the shipowner against injury claims by employees of the subcontractor. *Id.* at 58. This Court held the discovery rule did not operate to delay the accrual of the shipowner's cause of action; therefore, limitations barred its suit. *Id.* at 61–63.

On rehearing, the shipowner contended we erred in holding its Article 21.21 cause of action was barred by limitations and cited *Johnson & Higgins, Celtic Life Ins.* *Co. v. Coats,* 885 S.W.2d 96 (Tex.1994), and *Gilbreath v. White,* 903 S.W.2d 851 (Tex. App.-Texarkana 1995, no writ). *Id.* at 64. We distinguished *Johnson & Higgins* and *Celtic Life Insurance Co.* on the basis that those cases involved a first-party insured suing its agent, but the shipowner was a third-party insured suing its subcontractor's agent. *Sabine Towing & Transp. Co.,* 54 S.W.3d at 64–65.

In *Gilbreath,* this Court held the insured's cause of action against his agent accrued when the insurance company denied his claim, not when the property damage occurred that prompted his claim. *Gilbreath,* 903 S.W.2d at 856. In *Sabine,* we distinguished *Gilbreath* as involving not an issue of whether coverage existed, but whether coverage was properly denied. *Sabine Towing & Transp. Co.,* 54 S.W.3d at 66. We also distinguished *Gilbreath* on the basis that the parties could not have known the insurance company would deny coverage, but that the shipowner in *Sabine* could readily ascertain the existence of insurance coverage. *Id.*

The present case is distinguishable from *Sabine.* First, as we observed in *Sabine,* that case involved a third-party insured, not a first-party insured. Therefore, our case is more closely analogous to *Johnson & Higgins* and *Celtic Life Insurance Co.* than to Sabine. Second, our case also involves the denial of coverage, as was the case in *Gilbreath.*

Agnor contends the present case involves the denial of $400,000.00 of insurance coverage, i.e., the difference between $500,000.00 required by the Railroad Commission and $100,000.00 under the policy. But the present case is not one in which there was no coverage, as was true in *Sabine.* Rather, the Tri–State Appellants had some insurance coverage, but there was a dispute concerning the amount.

Williams and Agnor also contend that, even if Appellants' causes of action accrued when their injury became certain, the Tri-State Appellants sustained injury (1) July 24, 1995, when Southern County denied a defense to Tri-State Exploration in the Rice Appellants' negligence suit; (2) August 20, 1996, when Tri-State Exploration and Tri-State Well demanded Southern County provide a defense and indicated they were expending substantial funds on legal fees; (3) October 2, 1996, when Southern County agreed, under a reservation of rights, to provide such defense on the condition that Tri-State Exploration and Tri-State Well pay half their attorney's fees; and/or (4) May 25, 1997, when Tri-State Exploration and Tri-State Well accepted Southern County's offer. Appellants contend there is no summary judgment proof Tri-State Exploration or Tri-State Well paid any attorney's fees.

We need not resolve this issue. The summary judgment proof shows Southern County denied Tri-State Exploration and Tri-State Well a defense because they were not listed as insureds under the policy. Assuming they sustained an injury when Southern County declined to defend them, such injury would not constitute facts authorizing them to seek a remedy against Williams and Agnor for failing to obtain the proper amount of insurance. This would be true even if Southern County wrongfully denied them a defense. At best, the denial of a defense would constitute facts authorizing them to seek a judicial remedy against someone, not necessarily Williams and Agnor, for failing to list them as insureds under the policy.

But even if Williams and Agnor's assertion is correct, summary judgment was still inappropriate with respect to Tri-State Pipe, Stuart, and Tellgren. The summary judgment proof shows Southern County agreed to provide a defense to each of these Appellants. Therefore, even if the denial of a defense would constitute facts authorizing them to seek a judicial remedy against Williams and Agnor for failing to obtain the proper amount of insurance, there is no summary judgment proof they sustained such an injury.

Williams and Agnor also would not have been entitled to summary judgment on Tri-State Exploration's and Tri-State Well's causes of action for breach of fiduciary duty and breach of contract, even if Southern County's refusal of a defense constituted the type of legal injury that would accrue a cause of action for failure to obtain proper insurance. As mentioned previously, a cause of action for breach of fiduciary duty and breach of contract are each governed by a four-year statute of limitations. The earliest date Williams and Agnor allege the cause of action could have accrued based on the denial of a defense is July 24, 1995, within four years of the date Appellants filed suit.

Finally, Williams and Agnor would not have been entitled to summary judgment on Tri-State Exploration's and Tri-State Well's causes of action for negligence. As mentioned previously, a cause of action for negligence is governed by a two-year statute of limitations. Each of the dates Williams and Agnor allege Appellants' cause of action could accrue based on Southern County's denial of a defense to Tri-State Exploration and Tri-State Well is over two years from the date Appellants filed suit.

However, a fact issue remains concerning whether the statute of limitations was tolled from August 19, 1998, the date the trial court imposed the anti-suit injunction following Southern County's declaratory judgment action, to December 2, 1999, the date this Court held the anti-suit injunction was improper. That injunction enjoined Tri-State and the Rice Appellants

"from filing any other claim or action against Southern County ... directly or indirectly, involving the insurance proceeds and claims at issue in this litigation or in connection with the underlying suit and/or the motor vehicle accident made the basis of the underlying suit." The tolling of a statute of limitations is recognized in equity when a person is prevented from exercising his or her legal remedy by the pendency of legal proceedings. *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex.1991).

Williams and Agnor contend the injunction, by its terms, pertains only to suits against Southern County. Appellants contend that the injunction enjoined them from filing suit against Southern County directly or indirectly, and that Williams and Agnor offered no summary judgment proof showing the relationship between Williams, Agnor, and Southern County so as to negate the theory that a suit against Williams and Agnor is an indirect suit against Southern County.

■ A movant for summary judgment has the burden of negating the applicability of a tolling provision raised by his or her opponent. *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex.1996); *see also Enciso v. Chmielewski*, 16 S.W.3d 858, 860 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (treating movant as having burden to negate nonmovant's assertion of tolling provision in TEX. CIV. PRAC. & REM.CODE ANN. § 16.001(a) (Vernon Supp.2002) (legal disability)); *Louis v. Disc. Tire Co.*, 1 S.W.3d 698, 699 (Tex.App.-Amarillo 1999, no pet.) (movant for summary judgment had burden to negate nonmovant's assertion of tolling provision in TEX. CIV. PRAC. & REM.CODE ANN. § 16.063 (Vernon 1997) (temporary absence from state)); *Min v. Avila*, 991 S.W.2d 495, 504 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (movant for summary judgment had burden to ne-

gate nonmovant's assertion of tolling provision in Soldiers and Sailors Civil Relief Act). In this case, Appellants raised the tolling issue in response to Williams and Agnor's motion for summary judgment. Williams and Agnor did not respond with summary judgment proof negating the theory that a suit against them was an indirect action against Southern County.

■ Because a fact issue remains concerning whether the limitations period was tolled beginning August 18, 1998, summary judgment was inappropriate on Tri–State Exploration's and Tri–State Well's causes of action for negligence if their causes of action accrued before August 18, 1996. If, as Williams and Agnor contend, Southern County's denial of a defense to Tri–State Exploration and Tri–State Well constituted a legal injury such that their cause of action for failure to obtain proper insurance would accrue, then all but one of the dates Williams and Agnor alleged as the date of injury are within the limitations period.

■ The question is whether a fact issue remains concerning the one date that is not within the limitations period: July 24, 1995, the date on which Southern County first denied Tri–State Exploration a defense in the Rice Appellants' negligence suit. In *Delgado v. Burns*, 656 S.W.2d 428, 428 (Tex.1983), the appellant sued her doctor after he performed a hysterectomy on her and left surgical staples inside her body. The parties stipulated that the appellant's last post-operative checkup was December 8, 1975, and that the patient was not aware of the staples until February 3, 1978. *Id.* The Texas Supreme Court held the doctor was not entitled to summary judgment because he failed to prove which of the two dates, one inside the statute of limitations and one outside, was the last day of treatment. *Id.* at 429.

In *Conaway v. Chambers*, 823 S.W.2d 331, 332 (Tex.App.-Texarkana 1991), *aff'd*, *Chambers v. Conaway*, 883 S.W.2d 156 (Tex.1993), the appellant sued her doctor for failing to diagnose her breast cancer. A statute prescribed two relevant times in which limitations could begin: (1) the date the breach or tort occurred, or (2) the date the treatment was completed. *See Chambers*, 883 S.W.2d at 158. Our opinion focused on the latter.

The doctor contended the statute of limitations began running June 16, 1986, the last date on which there was communication between doctor and patient regarding the condition of her breast, and therefore the date her treatment was completed. *See Conaway*, 823 S.W.2d at 333. The patient contended limitations began running during the period from May 1986 through January 19, 1988, the period in which she continued to see the doctor for other unrelated problems. *Id.* We held there was a fact question concerning whether, by words or conduct, either party terminated the treatment of the patient's breast condition. *Id.* at 335.

On appeal, the Texas Supreme Court affirmed our judgment, but not our reasoning. *Chambers*, 883 S.W.2d at 157. The court focused on the date the breach or tort occurred. The court held the evidence, when viewed in the light most favorable to the patient, showed the cause of action accrued January 19, 1988, the last date on which the doctor could have but failed to provide appropriate follow-up examinations after his earlier tests on the patient's breast. *Id.* at 158. Significantly, the court held this Court erred in concluding there was a fact question because "determining when treatment has concluded ... simply amounts to deciding when a plaintiff's cause of action accrues, [a] question ... of law and not fact." *Id.* at 159.

It is difficult to reconcile the Texas Supreme Court's holdings in *Delgado* and *Chambers*, and its statement in *Murray* that "when ... there is no outright denial of a claim, the exact date of accrual of a cause of action becomes more difficult to ascertain and should be a question of fact to be determined on a case-by-case basis." *Murray*, 800 S.W.2d at 828 n. 2. After considering these cases, however, we conclude the summary judgment proof does not establish Williams' and Agnor's entitlement to summary judgment on Tri–State Exploration's and Tri–State Well's negligence claims based on the running of the statute of limitations.

First, the summary judgment proof shows that, at best, Southern County did not deny Tri–State Well a complete defense until May 25, 1997, the day when Tri–State Exploration and Tri–State Well agreed to Southern County's offer to pay half their attorney's fees. Second, though Southern County indicated by July 24, 1995, it was denying a defense to Tri–State Exploration, the summary judgment proof indicates that position was subject to negotiation, as Southern County eventually agreed to pay one half of Tri–State Exploration's attorney's fees, which would have included any attorney's fees Tri–State Exploration had already expended in defense of the Rice Appellants' negligence suit.

## Conclusion

The trial court rendered judgment in the Rice Appellants' negligence suit July 11, 1997. This was the date on which Appellants had sufficient facts available to seek a judicial remedy against Williams and Agnor. Appellants filed suit against Williams and Agnor June 3, 1999, within the two-year statute of limitations for negligence and the four-year statutes of limitations for breach of fiduciary duty and breach of contract. Therefore, summary

judgment was inappropriate on their claims.

We need not consider Appellants' contentions that the trial court abused its discretion in overruling their motion for a continuance and their objections to certain statements contained in Williams and Agnor's summary judgment proof.

We reverse the trial court's judgment and remand this case to that court for further proceedings.