NO. 07-02-0334-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

APRIL 28, 2003
_____

IN THE INTEREST OF SILAS J. HURD & MONIQUE C. HURD, MINOR CHILDREN
_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 51098-D; HON. DON EMERSON, PRESIDING
_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

Through this appeal, we are asked by the Office of the Attorney General of Texas (the State) to determine the rate at which interest accrues on child support payments becoming delinquent before January 1, 2002. The trial court ordered that it accrue at the rate of six percent per annum. The State argues that the rate should be 12 percent. We agree with the State and reverse, in part, the order of the trial court adopting the master's report.

***Background***

According to the record before us, Beverly Ann Hurd and Silas Hurd were divorced in November of 1994. They had two children at the time, and Silas was ordered to pay Beverly $165 per month in child support. He did not, and because of that the State moved to enforce the child support order on March 23, 2001.

A hearing was had on the motion, and the trial court entered findings of fact and conclusions of law. It found that Silas owed $9,866.48 in delinquent child support. This sum represented accumulated arrearage from December 1, 1994, through March 13, 2002. The trial court also determined that interest on the entire delinquency accrued at six percent per annum "pursuant to Section 157.265, Texas Family Code." Finally, the sum of $11,556.95 was awarded the State. Of that amount, $9,866.48 represented delinquent child support and $1,690.47 accrued interest.

### *Authority*

Prior to the Texas Legislature convening in 2001, the statute dictated that interest accrued

> on the portion of delinquent child support that is greater than the amount of the monthly periodic support obligation at the rate of 12 percent simple interest per year from the date the support is delinquent until the date the support is paid or the arrearages are confirmed and reduced to money judgment.

TEX. FAM. CODE ANN. §157.265(a). However, during the 2001 session, the legislature amended the provision by reducing the rate from 12 percent to six. TEX. FAM. CODE ANN. §157.265(a) (Vernon 2002). Furthermore, in the enabling legislation accompanying the amendment, it directed that 1) the amendment was to become effective on January 1, 2002 and 2) the change applied "only to . . . a child support payment that [became] due on or after the effective date of this Act . . . and . . . unpaid child support that became due before the effective date of this Act and for which a court has not confirmed the amount of arrearages and rendered a money judgment." Act of May 25, 2001, 77th Leg., R.S., ch. 1491, §3, 2001 Tex. Gen. Laws 4995. However, a "money judgment for child support

2

rendered before the effective date of this Act [was to be] governed by the law in effect on the date the judgment was rendered, and the former law [was] continued in effect for that purpose," according to the same body. *Id.* This amendment caused the dispute now before us. Simply put, the State argues that the change from 12 to six percent did not apply retroactively to reduce the amount of interest which had accrued before January 1, 2002. Silas contends otherwise. Who is right depends upon application of various concepts of statutory construction.

The first such rule of construction obligates us to presume that statutes and amendments thereto operate prospectively "unless expressly made retrospective." TEX. GOV'T CODE ANN. §311.022 (Vernon 1998); *Reames v. Police Officers' Pension Bd.*, 928 S.W.2d 628, 631 (Tex. App.--Houston [14th Dist.] 1996, no writ). Next, a statute is to be applied retroactively only if it appears by fair implication from language used that it was the intention of the legislature to make it applicable to both past and future transactions. *State v. Humble Oil & Refining Co.*, 141 Tex. 40, 169 S.W.2d 707, 708-09 (1943); *Rice v. Louis A. Williams & Assoc., Inc.*, 86 S.W.3d 329, 335 (Tex. App.--Texarkana 2002, pet. denied). Third, we must also presume that the legislature intended to comply with the United States and Texas Constitutions. TEX. GOV'T CODE ANN. §311.021(1) (Vernon 1998). Consequently, interpretations of an edict which render it constitutionally infirm must be avoided. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 629 (Tex. 1996). For instance, a statute cannot be read as depriving one of a vested right. *Id.* at 633. With this said, we turn to the dispute before us.

3

### *Application of Authority*

In reducing the interest rate to six percent, the legislature did not simply state that the modification became effective on January 1, 2002. It added that the change applied to "unpaid child support that became due before the effective date of this Act and for which a court has not confirmed the amount of arrearages and rendered a money judgment." In other words, the legislature stated that though the Act would become effective on January 1, 2002, the reduction from 12 to six percent nonetheless would apply to arrearages in existence before January 1, 2002, which had yet to be confirmed and reduced to a money judgment. In so reading the proviso and affording the words contained therein their common meaning, *see* TEX. GOV'T CODE ANN. §311.011(a) (Vernon 1998) (stating that words and phrases contained in a statute shall be read in context and construed according to the rules of grammar and common usage), one cannot but read it as fairly implying that the reduction was to apply to both past and future arrearages as long as they had yet to be confirmed and reduced to an actual money judgment. Simply put, if the change is to affect arrearages that accrued before the Act became effective, then the change must have retrospective affect.[1]

---

[1]We note that the court in *In re A.J.R.*, 97 S.W.3d 833 (Tex. App.--Dallas 2003, no pet. h.) held differently. It concluded that "unpaid child support obligations that have not been confirmed and reduced to judgment as of January 1, 2002 are subject to the twelve percent interest rate until January 1, 2002. On that date, however, interest begins accruing on those unpaid obligations at the new six percent rate." *Id.* at 835. The reason for this was because "[t]here is nothing to suggest that the legislature intended the changed rate to apply retroactively." *Id.* In reaching that conclusion, the court did not mention the passage in the enabling legislation stating that the change "applies to . . . unpaid child support that became due before the effective date of this Act and for which a court has not confirmed the amount of arrearages and rendered a money judgment." Nor did it explain why that language failed to evince an intent to apply the changes retroactively. Nor did the court attempt to explain what it believed that passage to mean. Instead, it read into the enabling legislation wording that divided unpaid child support into different categories, those categories being unpaid support that accrued before January 1, 2002, and unpaid support that accrued after January 1st. The former would accrue interest at 12 percent and the latter at six, according to the court.

4

Yet, our analysis is not over for another statutory provision must be taken into consideration. It is found at §157.261(a) of the Family Code and states that a "child support payment not timely made constitutes a final judgment for the amount due and owing, including interest as provided in this chapter." TEX. FAM. CODE ANN. §157.261(a) (Vernon 2002). Through it, the legislature has categorized the status of the delinquent payment as delinquent and due at the instant it becomes unpaid and memorialized the liability, including interest thereon, in a final judgment.[2]

Having categorized the sum due, including interest, as a final judgment, the legislature has also effectively vested the beneficiary of the support payment with the right to receive the amount due, including interest, at the instant it went unpaid. Simply put, if final relief has not been granted to one on the enforcement of a demand before modification of the law upon which it is based, then the right to the demand is not vested.

---

Yet, the legislators did not themselves make that distinction; indeed, they expressly rejected it by stating that the new rate applied to both "child support payment[s] that become due on or after the effective date of [the] Act and . . . unpaid support that became due before the effective date . . . ." Act of May 25, 2001, 77th Leg., R.S., ch. 1491, §3, 2001 Tex. Gen. Laws 4995. In short, it appears that the court in *A.J.R.* gave effect to merely that portion of the enabling legislation stating that the change affected "child support . . . that becomes due on or after the effective date of [the] Act." Thus, we choose not to follow the holding and instead conclude that the reduction was intended to apply to support payments becoming delinquent after January 1, 2002, *as well as* support that became delinquent prior thereto and had yet to be confirmed and incorporated into a monetary judgment.

[2]We realize that other sections of the Family Code provide for actually confirming the amount of arrearage which the legislature has already categorized as a "final judgment" and reducing that "final judgment" into a "cumulative money judgment". TEX. FAM. CODE ANN. §157.263(a) (Vernon 2002). Yet, because the legislature expressly decreed that the delinquency constitutes a "final judgment" at the time the payment becomes delinquent, we are bound by its categorization for purposes of this appeal. *See* TEX. GOV'T CODE ANN. §311.011(b) (Vernon 1998) (stating that words and phrases that have acquired a technical or particular meaning shall be construed accordingly). We do not address, however, whether in using the term "final judgment" the legislature sought to perform the inherently judicial function of adjudicating a dispute. It may well be that the lawmakers simply intended to cloak the unpaid child support payment and interest on it with indicia of finality given that the trial court previously ordered that the amounts be paid as they accrue.

*Walls v. First State Bank*, 900 S.W.2d 117, 122 (Tex. App.--Amarillo 1995, writ denied). However, when the demand has been merged into and recognized by a final judgment, then it becomes a vested right which cannot be divested through retroactive application of a law. *Id.* So, because the right to delinquent child support payments, including interest thereon, is incorporated into a final judgment through legislative fiat, then, logically, the right to the payment and interest thereon vests at the instant the delinquency arises. And, being vested, the right cannot be denied via our interpretation of another statute.

So, we must avoid construing the amendment to §157.265(a) in a manner that divests a beneficiary of delinquent child support of its vested right to receive the arrearage and interest thereon encompassed by the final judgment arising via §157.261(a). And, to construe the amendment to be retroactive would be to effectively divest the beneficiary of a portion of his entitlement encompassed by the final judgment. This is so because reducing the interest which already 1) had accrued at 12 percent and 2) had been encompassed within a final judgment via §157.261(a) would be to divest the beneficiary of the payment (or judgment creditor) of a portion of his vested right. Consequently, the amendment to §157.265(a) cannot be interpreted as retroactive.[3]

Finally, the record at bar discloses that a significant portion of the arrearage due from Silas accrued before the effective date of the amendment to §157.265(a). Additionally, in calculating interest on the entire sum (which had effectively been reduced to a final judgment via §157.261(a) and thereby constituted a vested right) the trial court

---

[3]So, while we disagree with the reasoning of the court in *In re A.J.R.*, we nonetheless arrive at the same result.

6

utilized a rate of six percent. It did not differentiate between unpaid support which accrued before the amendment to §157.265(a) became effective and unpaid support accruing thereafter. Given our construction of the amendment to that statute and our conclusion that its effect is not retrospective, the trial court was obligated to use a rate of 12 percent when calculating the interest accruing upon the pre-January 1, 2002 delinquency. Thus, it erred.

We reverse the April 30, 2002 order approving and adopting the master's report and remand the cause for further proceedings.


Brian Quinn
Justice