NO. 07-07-0022-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 10, 2008
______________________________

JOHN A. REDER, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

THE STATE OF TEXAS, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
_________________________________

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-414,285; HON. CECIL PURYEAR, PRESIDING
_______________________________

Memorandum Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
Â Â Â Â Â Â Â Â Â Â John A. Reder (appellant) appeals his conviction for indecency with a child. Via
three issues, he contends the trial court erred by failing to 1) admit evidence from a CPS
report and 2) grant his motions for continuance. We affirm.Â 
Â Â Â Â Â Â Â Â Â Â Issue One
Â Â Â Â Â Â Â Â Â Â The evidence that appellant thought the court wrongfully excluded consisted of
information contained in a report to the Child Protective Services. The information
concerned an allegation that the victim (who was four years old at the time) was âpurgingâ
at home and in school and was caught by her uncle in bed with her four-year-old cousinâs
head between her legs. During the latter episode, the child purportedly said ââdo it like
daddy does it.ââ Who made the report to CPS went unmentioned and so did the identity
of the uncle. So, it is unknown if the information was communicated by the uncle, by the
child, by the childâs mother, or by the next door neighbor after hearing it as gossip in a local
beauty shop. Moreover, CPS made no disposition of the allegation; in other words, it made
no determination of whether the allegations in the report were true or not. Given these
circumstances, and assuming that the report had relevance, see Johnson v. State, 933
S.W.2d 195, 198-99 (Tex. App.âWaco 1996, pet. refâd) (stating that the decision about
whether evidence of prior sexual conduct is admissible is one of relevance), it at the very
least would be within the realm of reasonable disagreement to conclude that any potential
value of the report was far outweighed by the potential prejudice or confusion of issues
accompanying it. This is especially so when nothing in the document purports to suggest
that someone other than appellant committed the acts underlying the indictment at bar.


 
Consequently, we cannot say that the trial court abused its discretion in excluding the
information. Metts v. State, 22 S.W.3d 544, 550 (Tex. App.âFort Worth 2000, no pet.)
(holding that in matters of evidence, the trial courtâs decision can be upheld by any
legitimate ground). Therefore, we overrule the issue.
Â 
Â Â Â Â Â Â Â Â Â Â Issues Two and Three
Â Â Â Â Â Â Â Â Â Â In the next and final two issues, appellant contends that the trial court erred in
denying his motions to continue the trial. Continuance was necessary, in his view, so that
he could flesh out the allegations in the aforementioned CPS report, which allegations he
believed were exculpatory. We overrule the issues.
Â Â Â Â Â Â Â Â Â Â Whether the trial court erred in denying the continuances depends upon whether
it abused its discretion. Gallo v. State, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). 
Furthermore, when a continuance is sought after trial begins, the movant must establish
that the delay is needed because of âsome unexpected occurrence since the trial began,
which no reasonable diligence could have anticipatedâ and which caused him surprise. 
Tex. Code Crim. Proc. Ann. art. 29.13 (Vernon 2006). 
Â Â Â Â Â Â Â Â Â Â Two motions for continuance are at issue. One was filed before trial began, the
other after trial began. Regarding the latter, appellant had received the CPS report in
question during the week prior to trial. Having received the report before trial, the discovery
of its contents falls outside the scope of âsome unexpected occurrence since trial began.â 
(Emphasis supplied). 
Â Â Â Â Â Â Â Â Â Â As for the initial motion to continue filed before the jury was selected, appellant
effectively sought time to find someone he considered to be a material witness. The
witness sought was the âuncleâ mentioned in the CPS report to which we previously
alluded. Given this reason for seeking a continuance, appellant had the burden to illustrate
how the uncleâs testimony was material before he could obtain a continuance. Hubbard
v. State, 912 S.W.2d 842, 844 (Tex. App.âHouston [14th Dist.] 1995, no pet.). And, he
attempted to satisfy this requirement by arguing that the uncleâs testimony could be used
to show that appellant never assaulted the child and that someone else did. 
Â Â Â Â Â Â Â Â Â Â We do not question that evidence indicating someone other than the accused
committed the crime indeed may be material. Yet, appellantâs argument is founded on a
defective factual basis. That is, nothing in the CPS report exculpates him. Nothing in it
suggests that he did not molest the child as alleged in the indictment, even if the
circumstances mentioned in the report were deemed true. Rather, the circumstances
described (when intertwined with imagination) suggest that the child could have been the
victim of other molestation at the hands of unknown parties, or so a reasonable jurist could
have interpreted the circumstances. But, nothing in the report suggests that appellant
never committed the acts for which he was charged. Consequently, we cannot say that
a trial court was obligated to postpone trial so that appellant could find the âuncleâ and have
him testify about what he saw. See State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App.
2006) (holding that when the standard of review is one of abused discretion, then the trial
courtâs decision must be affirmed if supported by any valid ground).
Â Â Â Â Â Â Â Â Â Â Accordingly, we affirm the judgment rendered below.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Brian Quinn
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice
Do not publish.



. 1945)). 

 There appears to be no dispute that a four-year statute of limitations would apply
to Stewart's claims against her father. See Tex. Civ. Prac. & Rem. Code Ann. § 16.004
(Vernon 2002) (prescribing four-year limitations period for claims of fraud and breach of
fiduciary duty). (12) We find the summary judgment record conclusively shows the statement
Stewart attributes to Johnson to the effect "that it was too late - I had signed an agreement
in '81, it was now '89, it was too late to do anything . . . ." was not a misrepresentation. 
Because the summary judgment evidence negated an element of her cause of action
against Johnson, summary judgment was appropriate. We overrule appellant's second
issue. 

 Our disposition of her second issue makes consideration of Stewart's first and third
issues unnecessary. Tex. R. App. P. 47.1. We affirm the trial court's judgment. 


 James T. Campbell

 Justice






 
1. John T. Boyd, Chief Justice (Ret.) Seventh Court of Appeals, sitting by
assignment. 
2. For simplicity, we refer to appellees as "Johnson." Stewart asserts no claim
against the law firm McWhorter, Cobb & Johnson, L.L.P., other than its vicarious liability
for the actions of its member Johnson. 
3. The exchange agreement, although dated January 1, 1982, also is sometimes
referred to in the summary judgment record as the "1981 agreement."
4. The summary judgment record contains no testimony from either defendant about
the events Stewart described.
5. Stewart's pleadings alleged that, among other things, she learned from the bank's
records that Johnson "had been involved in this matter as the attorney for her father and
American State Bank since at least [a date in October 1982]." In her deposition, Stewart
testified that, so far as she knew, Johnson had no involvement in the preparation of the
exchange agreement. 
6. On appeal, Stewart's brief asserts for the first time that her suit also alleged a
breach of fiduciary duty. We agree with Johnson that Stewart's pleadings cannot be read
to claim that Johnson owed her a fiduciary duty. Instead, she alleged her father owed her
a fiduciary duty.
7. Appellant also makes reference to claims against her father for breach of fiduciary
duty. As we later discuss, our disposition of her appeal would be the same whether her
unpursued claim against her father would have been based on fraud or breach of fiduciary
duty.
8. In addition to her complaint that Johnson falsely told her it was "too late" to bring
a fraud claim against her father, Stewart complains that Johnson's statement he "knew
nothing" about fraudulent conduct by her father was false, and complains of Johnson's
failure to disclose he had a conflict of interest because of his representation of her father
and American State Bank. The only injury she identifies as arising from her telephone
conversation with Johnson, however, is her failure to take action against her father for his
fraud. 
9. The summary judgment record contains no expert testimony about Stewart's
chances of success in a fraud action brought against her father in 1989. The parties do not
address the consequences of the absence of such expert testimony, and we need not
consider it. 
10. Relying on much of the same evidence and making essentially the same
argument, Johnson's motion also contended that the summary judgment evidence
conclusively negated the injury element of Stewart's fraud claim against him. See
FirstMerit Bank, N.A., 52 S.W.3d at 758 (elements of fraud include injury suffered from
reliance on false representation).
11. The certified mail return receipt shows Stewart signed for the letter on March 25,
1983. Stewart testified she had a distinct memory of her receipt of the letter.
12. But see Rice v. Louis A. Williams & Assocs., Inc., 86 S.W.3d 329, 333
(Tex.App.-Texarkana 2002, no pet.) (discussing authority that a two-year statute of
limitations applied to breach of fiduciary claims before 1999). The result in this case would,
of course, not be different if a two-year statute had applied.